*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1951**

Andrew R. Patson,
Relator,

vs.

Skaff Apartments, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed July 21, 2014
Affirmed
Schellhas, Judge**

Department of Employment and Economic Development
File No. 31331026-3

Andrew Patson, Detroit Lakes, Minnesota (pro se relator)

Skaff Apartments, Inc., Moorhead, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Relator challenges an unemployment-law judge's determination that he is ineligible for unemployment benefits because he misrepresented his criminal record during his employment interview. We affirm.

## FACTS

Respondent Skaff Apartments Inc. employed relator Andrew Patson as a maintenance technician. During his employment interview, Skaff's president asked Patson whether he had a criminal record and Patson said no, that he was "totally clean." After less than one week of employment, during Patson's 90-day probationary period, Skaff learned through a background check on Patson that he had three criminal convictions—a Minnesota conviction for driving while under the influence (DWI) and two North Dakota misdemeanor convictions. Skaff discharged Patson for lying about his criminal history. Patson sought unemployment benefits, and respondent Minnesota Department of Employment and Economic Development determined that he was ineligible because he was discharged for employment misconduct. Patson appealed the determination.

An unemployment-law judge (ULJ) conducted an evidentiary hearing and heard testimony from Skaff's president, its office manager, and Patson. Skaff's office manager testified that she ran the background check on Patson, and the DWI conviction was a misdemeanor. The president testified that he interviewed Patson on or shortly before October 4, 2012, and hired him based in part on his assurance that he had a clean criminal

record. Skaff discharged Patson after learning from a background check that Patson had an October 2010 DWI conviction, as well as two other misdemeanor convictions; Skaff's insurance company would not cover the company if one of its employees operated a company vehicle and had a DWI conviction from the past five years. Skaff's president testified that losing the insurance coverage would have effectively "shut [Skaff] down." The president testified that he discharged Patson for lying.

Patson admitted that he had the DWI conviction but stated, "I didn't really consider my D[W]I to be, you know, criminal" and the conviction "didn't even cross my mind." He also testified that the president never asked him generally, during the interview, whether he had a criminal record but only specifically whether he had been convicted of assault or theft. But, on cross-examination, Patson admitted that the president's reference to assault or theft was "more as an examples instead of direct questions."

On rebuttal, the president testified,

> I made it very clear and what I said is, do you have any criminal history, and he said no. And I said, anything. And he said, no. And then I said, well, anything, theft, . . . or drugs, or whatever. . . . [I said] I'm going to run this [background check] but, you know, and nothing can show up. And he said, it won't, it's clean. I said, I'm trusting you . . . .

The ULJ found that Patson "intentionally provided false information about his criminal history in order to be hired" and "had three prior criminal convictions, including a . . . DWI . . . conviction in 2010." The ULJ also found that Skaff's insurance company would not insure Patson to operate the company's vehicles and equipment due to his

3

DWI conviction. The ULJ concluded that the intentional misrepresentation seriously violated Skaff's reasonable expectations because it "betrayed Skaff Apartments's trust," and the ULJ decided that Patson was ineligible for unemployment benefits because he committed employment misconduct. Patson requested reconsideration, arguing that the ULJ erred by not listening to what Patson had to say and finding that he intentionally lied. The ULJ affirmed his decision, explaining that "[the president]'s testimony was more credible because it was very specific and seemed more plausible under the circumstances."

This certiorari appeal follows.

**D E C I S I O N**

Appellate courts "will narrowly construe the disqualification provisions of the [unemployment-benefits] statute in light of their remedial nature, as well as the policy that unemployment compensation is paid only to those persons unemployed through no fault of their own." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotations omitted); *see also* Minn. Stat. §§ 268.03, subd. 1 (no fault of their own), .031, subd. 2 (remedial nature) (2012). "Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg*, 796 N.W.2d at 315 (quotation omitted). Appellate courts review de novo as a question of law "whether a particular act constitutes disqualifying misconduct," *id.*, but "[w]hether the employee committed a particular act is an issue of fact," *Cunningham v. Wal–Mart Assocs.*, 809 N.W.2d 231, 235 (Minn. App. 2011). We "review the ULJ's factual findings in the light most favorable to the decision," *Stagg*, 796 N.W.2d at 315

4

(quotation omitted), and "give deference to the ULJ's credibility determinations," *Van de Werken v. Bell & Howell, LLC*, 834 N.W.2d 220, 221 (Minn. App. 2013).

Patson challenges the ULJ's determination that he is ineligible for unemployment benefits based on the ULJ's finding that he lied during his interview. An employee is ineligible for unemployment benefits if the employee is discharged for employment misconduct. Minn. Stat. § 268.095, subd. 4(1) (2012). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2012). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). "If the conduct for which the applicant was discharged involved only a single incident, that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct . . . ." Minn. Stat. § 268.095, subd. 6(d) (2012). "[A] material misrepresentation during the hiring process . . . fit[s] within the statutory definition of employment misconduct." *Santillana v. Cent. Minn. Council on Aging*, 791 N.W.2d 303, 307 (Minn. App. 2010).

Patson's statement that he had no prior convictions—that his record was clean—was an undisputed misrepresentation. The misrepresentation was material because it caused Skaff's president to distrust Patson and Skaff's employment of Patson jeopardized Skaff's insurance coverage and therefore its viability. Patson appears to focus his

5

challenge on the ULJ's finding that he "*intentionally* provided false information about his criminal history," apparently arguing that his misrepresentation was inadvertent and the result of the interview questions being insufficiently clear. (Emphasis added.) We are not persuaded. Employment misconduct includes "negligent . . . conduct," although it does not include "conduct that was a consequence of the applicant's . . . inadvertence." Minn. Stat. § 268.095, subd. 6(a), (b)(2) (2012). "Inadvertent conduct, even if negligent, is not employment misconduct." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 538, 540 (Minn. App. 2011) ("A person is negligent when she fails to do something that a reasonable person would do. . . . Inadvertence is . . . an oversight or a slip." (quotation omitted)).

In light of our deference to ULJ findings, *Stagg*, 796 N.W.2d at 315, including credibility findings, *Van de Werken*, 834 N.W.2d at 221, we conclude that substantial evidence supports the ULJ's determination that Patson committed employment misconduct because his misrepresentation was either intentional or negligent and was not inadvertent. The ULJ did not err by deciding that Patson is ineligible for unemployment benefits.

**Affirmed.**