*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0470**

Jesse Marshall,
Relator,

vs.

St. John's Lutheran Home of Albert Lea,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed December 15, 2014
Affirmed
Reyes, Judge**

Department of Employment and Economic Development
File No. 31768115-3

Jesse B. Marshall, Albert Lea, Minnesota (pro se relator)

St. John's Lutheran Home of Albert Lea, Albert Lea, Minnesota (respondent employer)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Relator challenges a final decision of an unemployment law judge (ULJ) that he is ineligible for unemployment benefits because he was discharged for employment

misconduct for excessive tardiness. Relator argues that (1) the ULJ erred by determining that relator's repeated tardiness constituted employment misconduct; (2) the ULJ abused his discretion by declining to grant a new evidentiary hearing; and (3) relator did not receive a fair hearing. We affirm.

**FACTS**

Relator Jesse Marshall worked for St. John's Lutheran Home (St. John's) from October 3, 2011, through October 18, 2013, as a maintenance coordinator. His job responsibilities included coordinating the maintenance department, performing tasks as the lead maintenance person, and taking care of the boilers. Marshall was scheduled to work 40 hours per week in full-time employment. St. John's policy provides that an employee may be suspended or terminated if the employee has nine occurrences of tardiness over a rolling 12-month period. However, there were some discrepancies relating to the number of late appearances required before the policy called for termination. Marshall claimed a company memo stated termination would occur after 11 instances of tardiness, while St. John's maintained that the policy has always been nine.

On November 13, 2012, Marshall arrived to work 30 minutes late and was suspended for one day because he had reached seven late occurrences in a rolling 12-month period. Despite the suspension, Marshall was repeatedly tardy throughout the following year. On February 1, 2013, Marshall arrived 45 minutes late to work. On February 14, Marshall was 30 minutes late and was suspended for two days. At that time, St. John's changed Marshall's start time from 7:00 a.m. to 8:00 a.m. in an effort to help him arrive on time. Despite the change, Marshall arrived late to work on June 27,

2

July 18, and September 3. On September 6, Marshall received a written warning due to his repeated tardiness. St. John's informed him that being on time was important and that another late arrival would result in a two-day suspension. On September 26, Marshall was 15 minutes late to work but was not suspended. On October 17, Marshall was 90 minutes late to work and was discharged the next day. At the time of his discharge, Marshall had eight occurrences of tardiness over a rolling 12-month period.

Marshall applied for unemployment benefits but was determined to be ineligible on November 11, 2013. He appealed the determination and a telephone hearing with a ULJ was held on December 12, 2013. The ULJ issued his findings of fact and decision the next day and upheld the ineligibility determination. The ULJ found that Marshall was tardy eight times during a rolling 12-month period and as such, Marshall violated his employer's reasonable expectation that he report to work for his scheduled shifts on time. The ULJ found that Marshall had been disciplined for excessive tardiness in the past by his employer, Marshall was aware his tardiness was a problem, and Marshall knew that being on time was very important to his employer. Marshall filed a request for reconsideration on January 2, 2014. The ULJ affirmed his decision on February 21, 2014, stating that the new evidence Marshall presented "would not likely change the outcome of the decision and [Marshall] has not shown good cause for not having previously submitted the evidence." This certiorari appeal follows.

## D E C I S I O N

The purpose of chapter 268 is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2012). The chapter is remedial in nature and

3

must be applied in favor of awarding benefits, and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2012). When reviewing the decision of a ULJ, this court may affirm, remand for further proceedings, reverse, or modify the decision below if the substantial rights of the relator have been prejudiced because the conclusion, decision, findings, or inferences are affected by errors of law, unsupported by substantial evidence in view of the entire record, or are arbitrary or capricious. 2014 Minn. Laws, ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d) (2014)).

Marshall makes numerous general complaints about the truthfulness of St. John's testimony and about the legitimacy of the ULJ's credibility determination, among other arguments. In any appeal, this court seeks to identify and analyze an appellant's assertions of error. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) ("The function of the court of appeals is limited to identifying errors and then correcting them."). Marshall's arguments appear to fall into three categories: (1) the ULJ erred in determining that Marshall's repeated tardiness constituted employment misconduct; (2) the ULJ abused his discretion by declining to hold a new evidentiary hearing; and (3) the record shows that Marshall did not receive a fair telephone hearing. We find none of these arguments convincing.

## I. Repeated Tardiness Constituting Employee Misconduct

Marshall first argues that the ULJ erred in finding that his repeated tardiness was employment misconduct disqualifying him from unemployment benefits. Whether Marshall engaged in conduct that disqualifies him from unemployment benefits is a

mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether a particular act constitutes employment misconduct is a question of law, which is reviewed de novo. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). But whether the employee committed the particular act is a question of fact. *Id.* This court reviews the ULJ's factual findings "in the light most favorable to the decision" and defers to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

An employee who is discharged from employment for misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). Employment misconduct means "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." 2014 Minn. Laws, ch. 239, §5, at 772 (to be codified at Minn. Stat. § 268.095, subd. 6(a) (2014)). As a general rule, an employee's refusal to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct. *Schmidgall*, 644 N.W.2d at 804. "Minnesota law allows an employer to establish and enforce reasonable rules governing employee absences." *Cunningham v. Wal-Mart Assoc., Inc.*, 809 N.W.2d 231, 234 (Minn. App. 2011).

Marshall argues that the ULJ erred in determining that his conduct constituted employee misconduct under section 268.095, subdivision 6(a). Marshall argues that he had no way of knowing that his job was on the line at the time of his discharge and that the only time he was concerned about a possible termination was on February 14, 2013,

5

after his two-day suspension. On September 6, 2013, two late occurrences prior to the instance that lead to his discharge, Marshall received a warning that he would be suspended the next time he was late. However, when he was late on September 26, Marshall did not receive the suspension. Therefore, Marshall argues that St. John's did not follow its own policy during his final late occurrence on October 17, when he was immediately discharged instead of first receiving a suspension.

Marshall's argument misses the mark. The "general rule" regarding employment misconduct only requires that an employer's policies be "reasonable" and an employer has a right to expect that employees will work when scheduled. *Schmidgall*, 644 N.W.2d at 804. Therefore, St. John's had a reasonable expectation that Marshall would arrive at work every day at 8:00 a.m. Whether Marshall complied with the reasonable policy of showing up when scheduled has little to do with whether St. John's should have first suspended him before discharging him. The facts in this case are particularly similar to those in *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 316 (Minn. 2011). In *Stagg*, the employer had a disciplinary procedure for tardiness which called for three-day and 10-day suspensions after the third and fourth instances, and discharge after the fifth. *Id* at 314. The relator in *Stagg* was discharged after his fourth instance and argued that he did not know his job was at risk because he had not first received the 10-day suspension. *Id.* The court rejected this argument and instead held that:

> [W]hether an employer follows the procedures in its employee manual says nothing about whether the employee has violated the employer's standards of behavior. Put another way, an employee's expectation that the employer will follow its disciplinary procedures has no bearing on

6

whether the employee's conduct violated the standards the employer has a reasonable right to expect or whether any such violation is serious.

*Id*. at 316.

A similar analysis applies here. A pattern of absenteeism and tardiness can constitute employment misconduct because it demonstrates a lack of concern by the employee for the job. *Jones v. Rosemount, Inc.*, 361 N.W.2d 118, 120 (Minn. App. 1985). Marshall was late on at least eight occasions between October 2012 and October 2013, after seven times in the prior twelve month period. Such a record demonstrates a serious violation of the standards of behavior that an employer had the right to reasonably expect.

Marshall's other arguments relating to misconduct are without merit. First, Marshall makes general claims relating to whether the policy was really a "nine-in-twelve-months" policy or an "eleven-in-twelve-months" policy. The ULJ heard testimony from both parties on this matter and determined that the policy was indeed nine late occurrences over a rolling 12-month period and that Marshall was aware of this policy. This court "defer[s] to the ULJ on credibility determinations." *Wiley v. Dolphin Staffing—Dolphin Clerical Grp.*, 825 N.W.2d 121, 124 (Minn. App. 2012), *review denied* (Minn. Jan. 29, 2013). Moreover, this argument focuses on the employer's policy rather than on Marshall's conduct.

Second, Marshall makes a brief argument that his tardiness was not misconduct because it was caused by St. John's asking him to work voluntary night shifts. No evidence was submitted at the evidentiary hearing to corroborate this claim. The only excuses Marshall gave in his testimony to justify his tardiness was that he was up late

7

working on his house or truck, and on another occasion, he stayed up late to clean a wound on his hand. Marshall tried to give testimony about St. John's making him work late in his request for reconsideration, but the ULJ held that such evidence would not likely change the outcome of the decision and that he had not shown good cause for not having previously submitted it. The ULJ did not abuse his discretion in making that determination.

## II. New Evidentiary Hearing

The ULJ must order an additional evidentiary hearing if an involved party shows that evidence which was not submitted at the evidentiary hearing: (1) would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence or (2) would show that the evidence that was submitted at the evidentiary hearing was likely false and that the likely false evidence had an effect on the outcome of the decision. 2014 Minn. Laws, ch. 251, art. 2, § 16, at 864 (to be codified at Minn. Stat. § 268.105, subd. 2(c) (2014)). This court defers to a ULJ's decision whether to grant an additional evidentiary hearing and will reverse that decision only if the ULJ abused its discretion. *Vasseei v. Schmitty & Sons Sch. Buses Inc.*, 793 N.W.2d 747, 750 (Minn. App. 2010).

Marshall argues that the ULJ erred by not granting an additional evidentiary hearing because he submitted evidence showing that St. John's testimony was not truthful and that he was late because his job responsibilities caused him to come in during the evenings prior to his late occurrences. In his request for reconsideration, Marshall stated that he was late on February 14, 2013, due to car troubles but was told by St. John's that

8

he would not receive a tardy if he still came in. According to Marshall, the ULJ should have ordered a new evidentiary hearing upon receiving these statements because they show that St. John's testimony regarding the February 14, 2013 incident was false. This argument is unconvincing. Even if the February 14 incident is completely ignored, there are multiple uncontested incidents in the record which display a pattern of excessive tardiness. Throwing one out would have no effect on the outcome of the decision.[1] Marshall further argues that an additional evidentiary hearing was warranted when Marshall indicated that his tardiness was caused by being forced to work late on the nights previous to being tardy. Again, this argument is unconvincing. Ignoring the dubious assumption that working late the night before would excuse tardiness the next morning, there is nothing in the record showing that Marshall worked on the specific nights prior to being tardy. After admitting that he has "no documented proof," Marshall simply states that he had been forced to work late "multiple times" and recalls a time where he was called in while on vacation. Such evidence is unhelpful in showing that Marshall did not commit misconduct by repeatedly being tardy on the specific dates discussed.[2] Therefore, the ULJ did not abuse his discretion when he affirmed his previous decision and denied granting an additional evidential hearing.

---

[1] Furthermore, Marshall offered no good cause at reconsideration for why this evidence was not previously brought, as required under section 268.105, subdivision 2(c). Marshall currently attempts to argue that he did not bring it forth because he did not understand what the term "evidence" meant, but such an argument was not previously raised and is thus precluded under *Thiele v. Stich*, 482 N.W.2d 580, 582 (Minn. 1988).

[2] Again, Marshall offered no good cause at reconsideration for why this evidence was not previously brought, as required under section 268.105, subdivision 2(c).

9

### III. Fair Hearing

Finally, Marshall asserts that he did not get a fair hearing. A ULJ "must exercise control over the hearing procedure in a manner that protects the parties' rights to a fair hearing." 39 Minn. Reg. 147, 151, 153 (Aug. 4, 2014) (to be codified at Minn. R. 3310.2921 (Supp. 2014)). A hearing is generally considered fair if both parties are afforded the opportunity to give statements, cross-examine witnesses, and offer and object to exhibits. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 529-30 (Minn. App. 2007) (citing Minn. R. 3310.2921). A ULJ should assist parties in the presentation of evidence. 39 Minn. Reg. 147, 151, 153 (Aug. 4, 2014) (to be codified at Minn. R. 3310.2921 (Supp. 2014)). A ULJ must ensure that all relevant facts are clearly and fully developed. *Id.*[3]

Marshall's complaints against the ULJ are twofold: (1) the ULJ failed to fully develop the record and (2) the ULJ exhibited bias when questioning the witness, which favored St. John's. A careful examination of the record dispels both assertions.

The ULJ did not fail to develop the record. The ULJ began the hearing by explaining the procedure and asked Marshall if he had any questions about the procedure, to which he responded, "No." The ULJ questioned each witness about the factual underpinnings of the case. The ULJ specifically asked about Marshall's job

---

[3] The "clearly and fully developed" language of this section has since been removed by 2014 Minn. Laws, ch. 251, art. 2, § 15 (to be codified at Minn. Stat. § 268.105, subd. 1(b) (2014)). But because the amendment was not specifically made retroactive, we perform the analysis under the 2012 version of the statute. *See Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012) (addressing how to determine whether amendment of statute was meant to be retroactive).

10

responsibilities and the wound he suffered prior to the last time he was late, two areas which Marshall asserts were not properly developed. The ULJ provided Marshall an opportunity to question witnesses and offer additional evidence at the end of his testimony. Both parties were given the opportunity to provide closing statements prior to closing the record. Marshall's argument that the ULJ failed to develop the record fully is not support by the record.

Marshall asserts that the ULJ exhibited bias by "coaching" St. John's through their testimony. Marshall specifically argues that the ULJ's question "So when you met with him on September 6, did you convey to him the seriousness of the issue or tell him that his job was in jeopardy?" exhibited bias because it "basically tells them to say yea." This is not bias. Instead, the ULJ was simply trying to determine whether Marshall knew that his job was on the line when he showed up late for the final time in October. This is a valid inquiry and was not made in a way that "coached" the witness to respond one way or the other. Furthermore, the ULJ specifically asked Marshall for his version of what he was told on September 6. It seems that what Marshall really objects to is the ULJ's credibility determination favoring St. John's version over his own. This is not evidence of bias and this court defers to the ULJ's credibility determinations. *Skarhus*, 721 N.W.2d at 344. Accordingly, Marshall's arguments are without merit and the ULJ did not err in determining that he is ineligible for unemployment benefits.

**Affirmed**.

11