*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1168**


Keith G. Lassiter,
Relator,

vs.

The Bulldog Restaurant NE, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.


**Filed January 5, 2015
Affirmed
Bjorkman, Judge**


Department of Employment and Economic Development
File No. 32114012-3

Jasper Berg, IAJ Law, LLC, Woodbury, Minnesota (for relator)

Nancy Susan Anton, Lindquist & Vennum, Minneapolis, Minnesota (for respondent The Bulldog Restaurant NE, Inc.)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Relator challenges the decision of the unemployment-law judge (ULJ) that he was discharged for employment misconduct, arguing that (1) the ULJ failed to make the required credibility findings, (2) the evidence does not substantially support the ULJ's findings, (3) the ULJ failed to adequately develop the record, and (4) his conduct reflects only an error in judgment. We affirm.

## FACTS

Respondent The Bulldog Restaurant NE, Inc. hired relator Keith Lassiter in May 2012 to work as a bouncer. The position required him to, among other duties, deal with intoxicated or unruly customers. The Bulldog provided training and on-going instruction on its security policies, including its requirement that employees "use the least amount of force necessary" when intervening with customers, and "always get a manager." The Bulldog also trained Lassiter on how to avoid getting angry in response to unruly customers, and The Bulldog's owner, Amy Rowland, did several anger-management role-playing exercises with Lassiter.

In July 2013, Lassiter intervened with a customer by physically grabbing him and pushing him out the door. Rowland discussed the incident with Lassiter and reminded him never to touch a customer. She noted the warning in her records.

Lassiter again intervened with a customer around closing time on December 28, 2013. The customer became upset and made "inappropriate" statements after the bartender removed his drink from the bar. Lassiter approached the customer,

2

aggressively moving his hands near the customer's face. The customer did not make any movements in response, but Lassiter continued to flail his hands near the customer's face and then physically grabbed the customer. A fight ensued, in which Lassiter suffered a severe cut to his face. On January 8, 2014, after reviewing the security footage of the incident, Rowland discharged Lassiter.

Lassiter applied to respondent Minnesota Department of Employment and Economic Development (DEED) for unemployment benefits. In his application, Lassiter stated that he was discharged because he did not follow the procedure for removing a customer from the establishment, explaining that the policy he violated was: "DO NOT PUT YOUR HANDS ON ANYONE." DEED determined that Lassiter is ineligible for benefits because he was discharged for employment misconduct. Lassiter appealed.

The ULJ conducted a de novo evidentiary hearing at which both Lassiter and The Bulldog were represented by counsel. Lassiter testified and presented three witnesses: a friend who observed the altercation from outside the bar, a former bartender at The Bulldog who was not present on December 28, and another former employee who worked as a bouncer but was not present on December 28. The Bulldog presented the testimony of Rowland and the bar's security manager, neither of whom observed the incident. The ULJ also reviewed the security footage. The ULJ determined that Lassiter committed employment misconduct by knowingly violating The Bulldog's policies regarding customer security, and therefore is ineligible for benefits. Lassiter requested reconsideration, and the ULJ affirmed. Lassiter brings this certiorari appeal.

3

**DECISION**

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Whether an employee committed employment misconduct is a mixed question of law and fact. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). Whether an employee committed a particular act is an issue of fact, which we review for substantial evidence, but whether the act constitutes employment misconduct is a legal question, which we review de novo. *Id.* We may reverse the decision of a ULJ "if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are . . . unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 268.105, subd. 7(d) (2014).

**I.    The ULJ's findings of fact comply with the statutory requirements and have substantial record support.**

"When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." *Id.*, subd. 1a(a) (2014). But when the ULJ makes the required credibility findings, we accord them deference, not disturbing them "when the evidence substantially sustains them." *See Peterson v. Nw. Airlines, Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008).

Lassiter first argues that the ULJ's findings are inadequate because she addressed the witnesses' credibility collectively. We disagree. The requirement that the ULJ make express credibility findings does not mandate a separate finding as to each witness, only

4

that the ULJ expressly articulate his or her reasoning as to credibility. *See* Minn. Stat. § 645.08(2) (2014) (stating that singular references in statutory language include the plural). The ULJ did so here. In describing the credibility of the six witnesses, the ULJ noted that they presented essentially two versions of events—Lassiter's version and The Bulldog's version. The ULJ found that "the testimony of The Bulldog's witnesses was more credible than that of Lassiter and his witnesses because it was the more plausible and more believable version of the events." The ULJ also noted that Lassiter's testimony was "self-serving" and that the security footage corroborated the testimony of The Bulldog's witnesses. We conclude that the ULJ made the required credibility findings.

Lassiter next asserts that the ULJ's factual findings lack substantial evidentiary support. We are not persuaded. First, the record supports the finding that Lassiter was aware of The Bulldog's policies to always use the least amount of force necessary when intervening with a customer, never touch customers, and always get a manager. Lassiter points to his testimony that his multiple managers told him different things but never told him not to touch a customer. But Lassiter's testimony is belied by his own statement in his application for benefits acknowledging that he was told never to touch customers and was discharged for violating that policy. Moreover, Rowland testified that she personally trained Lassiter on this policy, reminded him of it following his July 2013 violation, and contemporaneously documented that reminder. And the record contains portions of the employee handbook and a sign that was posted in the workplace, which highlight the policies of using the least amount of force possible when dealing with unruly customers and always involving a manager.

Second, the record supports the ULJ's finding that Lassiter violated The Bulldog's policies by aggressively confronting and initiating physical contact with a customer. Careful review of the security footage confirms this version of events. While the video quality is poor, it plainly shows Lassiter grabbing the customer. And we resolve any question as to the significance of the video in favor of the ULJ's findings, as she had the unique opportunity to question Lassiter and Rowland as she reviewed the footage.

In sum, we conclude that the evidence substantially supports the ULJ's findings that Lassiter knew of The Bulldog's policies prohibiting him from touching customers or otherwise using any more force than necessary, and violated these policies by aggressively confronting and physically grabbing a customer.

## II.    The ULJ thoroughly developed the record.

A hearing to determine qualification for unemployment benefits is an evidence-gathering inquiry. 39 Minn. Reg. 151, 153 (Aug. 4, 2014) (to be codified at Minn. R. 3310.2921 (Supp. 2014)); *see also* Minn. Stat. § 268.105, subd. 1(b) (2014) ("[DEED] may adopt rules on procedures for hearings under Minnesota Rules, chapter 3310."). At the evidentiary hearing, each party may present and examine witnesses and offer their own documents or other exhibits, but the ULJ "must ensure that relevant facts are clearly and fully developed." Minn. R. 3310.2921.

Lassiter contends that the ULJ failed to develop the record adequately because she denied his request to subpoena a video expert. He asserts that expert review was necessary because of the ULJ's admittedly limited computer knowledge and the poor quality of the security footage. We disagree. In response to Lassiter's subpoena request,

the ULJ clarified that the request was grounded in his assertion that the video from a particular camera angle shows the customer striking him first. During the hearing, the ULJ carefully reviewed multiple videos, zoomed in and viewed the incident from the angle Lassiter requested, and asked clarifying questions of both Lassiter and Rowland while reviewing the footage. The fact that the ULJ ultimately disagreed with Lassiter's interpretation of the video evidence does not mean she did not fully develop the record.

Lassiter also contends that the ULJ deprived him of a fair hearing by not permitting him to call a credibility witness. The ULJ explained that ULJs do not "typically allow witnesses to come in and talk about someone's credibility unless they were specifically involved in the events leading up to the termination." In response, Lassiter's counsel indicated that one witness was "identified for credibility issues," and said, "I understand if he can't speak today." Lassiter did not subsequently ask to call that witness. But he did present three other witnesses, and the ULJ permitted extensive testimony as to numerous factors that bear on Lassiter's credibility. On this record, we conclude that the ULJ did not improperly limit the evidence bearing on Lassiter's credibility.

### III. Lassiter committed employment misconduct.

Misconduct is "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014). Generally, refusing to follow an employer's reasonable policies and requests constitutes misconduct. *Schmidgall v.*

*FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). But "conduct an average reasonable employee would have engaged in under the circumstances" and "good faith errors in judgment if judgment was required" are not employment misconduct. Minn. Stat. § 268.095, subd. 6(b)(4), (6) (2014).

Lassiter contends that his conduct on December 28 was not employment misconduct but, rather, what an average, reasonable bouncer would have done and, at most, a good-faith error in judgment. We are not persuaded. As we discussed above, the record substantially supports the ULJ's findings that Lassiter was aware of policies requiring him to use as little force as possible in intervening with an unruly customer and never to touch a customer, and that he violated these policies by aggressively confronting and initiating physical contact with the customer. The ULJ also expressly found that Lassiter's conduct was not merely a good-faith error in judgment because he initiated contact after being repeatedly instructed not to touch customers, and after receiving a warning. We agree and conclude that Lassiter's knowing violation of his employer's reasonable policies constitutes employment misconduct.

**Affirmed.**