**Ronald STAGG, Respondent,**

v.

**VINTAGE PLACE INC., Respondent,**

**Department of Employment and Economic Development, Appellant.**

No. A09–949.

Supreme Court of Minnesota.

April 20, 2011.

Paul A. Banker, Christopher A. Grgurich, Kelly G. Laudon, Lindquist & Vennum P.L.L.P., Minneapolis, Minnesota, for respondent Ronald Stagg.

Lee B. Nelson, Amy R. Lawler, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota, for appellant.

## OPINION

PAGE, Justice.

On January 29, 2009, respondent Ronald Stagg was discharged from employment by respondent Vintage Place Inc. (Vintage Place) for excessive absenteeism and tardiness. Stagg applied for unemployment benefits. An unemployment law judge (ULJ) determined that Stagg was ineligible for unemployment benefits because he was discharged for employment misconduct as defined by Minn.Stat. § 268.095, subd. 6(a) (2010). The court of appeals reversed, holding that because Vintage Place failed to follow its progressive discipline policy when it terminated Stagg, the termination was not for employment misconduct. *Stagg v. Vintage Place Inc.*, No. A09–949, 2010 WL 2160902, at *4 (Minn. App. June 1, 2010).

This case presents two issues for our review: (1) whether a terminated employee who engaged in employment misconduct as defined in Minn.Stat. § 268.095, subd. 6(a), may be denied unemployment benefits even though the employer, in terminating the employee, failed to follow its progressive disciplinary policy when it terminated the employee; and, if so, (2) whether the conduct that resulted in Stagg's termination constituted employment misconduct because it involved a serious violation of the standards of behavior that Vintage Place had a right to reasonably expect. Because we answer both questions in the affirmative, we reverse the court of appeals.

Stagg began his employment with Vintage Place, a group home for troubled youth, in November 2007. Vintage Place had a policy requiring employees to notify a supervisor at least two hours before the start of a shift if they were going to be absent or late. Vintage Place's employee manual set forth a five-step disciplinary procedure for absenteeism and tardiness, starting with an oral warning for the first unexcused absence, and progressing to a written warning for the second unexcused absence, to a three-day suspension for the third unexcused absence, and to a ten-day suspension for the fourth unexcused absence. The discipline prescribed for the fifth unexcused absence was discharge. Stagg began having tardiness and attendance problems in November 2008. On November 15, 2008, Stagg missed mandatory training and, according to Vintage Place, gave no advance notice. On November 26, Stagg, without notifying his supervisor, did not show up for work. As a result, he received an oral warning.

On November 27, Stagg arrived for his shift two hours late without advance notice and was placed on probation. On December 1, Stagg called in sick after his shift began. It does not appear from the record before us that Stagg was disciplined for the December 1 absence. On December 3, Stagg arrived for work 45 minutes late without advance notice and was given a two-day suspension. On January 28, 2009, Stagg called in after his shift began to say that he had overslept. The following day, Stagg was fired.

Under Minn.Stat. § 268.095, subd. 4(1) (2010), an employee discharged from employment for "employment misconduct" is ineligible for unemployment benefits. Minnesota Statutes § 268.095, subd. 6(a), defines "employment misconduct" as

> any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly:
>
> (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or
>
> (2) a substantial lack of concern for the employment.

Stagg's application for unemployment benefits was denied by the Department of Employment and Economic Development on the ground that Stagg had been terminated for employment misconduct.

Stagg appealed and a telephonic hearing was conducted by a ULJ. At the hearing, Stagg argued that because he had not received a ten-day suspension—the last disciplinary step short of termination under Vintage Place's progressive discipline policy—he did not understand that his job was at risk for further absence or tardiness. But the ULJ rejected this argument, noting that Stagg had "received multiple warnings, both [oral] and written, regarding his attendance" in addition to a suspension. The ULJ therefore did not consider the employer's failure to follow its progressive discipline policy "to the letter" to be a "significant factor in determining whether [Stagg's] actions [amounted to]

employment misconduct." The ULJ concluded that "Stagg's actions displayed a serious violation of the standards of behavior Vintage [Place] had a right to reasonably expect" and that Stagg was therefore ineligible for unemployment benefits. Stagg's request for reconsideration was denied.

On appeal to the court of appeals, the ULJ's decision was reversed. *Stagg*, 2010 WL 2160902. The court of appeals determined that Stagg "could have reasonably expected Vintage [Place] to follow the disciplinary steps [set out in the employee handbook], and because Vintage skipped the fourth step of a ten-day suspension, [Stagg's] absenteeism does not amount to employment misconduct precluding eligibility for unemployment benefits." *Stagg*, 2010 WL 2160902, at *4 (citing *Hoemberg v. Watco Publishers, Inc.*, 343 N.W.2d 676, 679 (Minn.App.1984), *rev. denied* (Minn. May 15, 1984)).

■■■■ In unemployment benefit cases, the appellate court is to review the ULJ's "factual findings in the light most favorable to the decision" and should not disturb those findings as long as there is evidence in the record that reasonably tends to sustain them. *Jenkins v. Am. Express Fin. Corp.*, 721 N.W.2d 286, 289 (Minn.2006) (citing *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002); *Markel v. City of Circle Pines*, 479 N.W.2d 382, 383–84 (Minn.1992)). "Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Schmidgall*, 644 N.W.2d at 804 (citing *Colburn v. Pine Portage Madden Bros., Inc.*, 346 N.W.2d 159, 161 (Minn. 1984)). Determining whether a particular act constitutes disqualifying misconduct is a question of law that we review de novo. *Schmidgall*, 644 N.W.2d at 804 (citing *Ress v. Abbott Nw. Hosp., Inc.*, 448 N.W.2d 519,

523 (Minn.1989)). We have repeatedly stated that we will narrowly construe the disqualification provisions of the statute in light of their remedial nature, as well as the policy that unemployment compensation is paid only to those persons " 'unemployed through no fault of their own.' " *Valenty v. Med. Concepts Dev., Inc.*, 503 N.W.2d 131, 134 (Minn.1993).

■■■■ In reversing the denial of unemployment benefits, the court of appeals relied on its previous decision in *Hoemberg*, in which the court reversed the denial of unemployment benefits to two employees who were immediately terminated from employment, rather than being warned, as the employer's discipline policy provided. *See Hoemberg*, 343 N.W.2d at 678–79. In *Hoemberg*, the employer's progressive discipline policy called for three forms of formal discipline—a "Verbal Warning," a "Written Warning," and a "Final Warning"—and stated that the employee "will be told specifically, leaving no doubt, when receiving discipline." *Id.* at 677. For a "serious" infraction, the employer's progressive discipline policy permitted "immediate termination." *Id.* The employer posted a notice over the company time clock barring employees from doing "personal errands" on "company time" and stated its notice was "a final warning." *Id.* at 678. Two employees left the plant for a personal errand and were fired; they were denied unemployment benefits. *Id.* The employer's general manager admitted that the employees' actions were not "serious" enough to warrant immediate termination under the employer's handbook. *Id.* at 679. The court of appeals reversed the denial of benefits in *Hoemberg*, concluding that the fired employees "could reasonably expect the company to follow the handbook provisions on individual warnings for discipline," *id.* at 678, and therefore the employees' actions "did not

rise to the level of misconduct" under the applicable statute, *id.* at 679.

In this case, the court of appeals acknowledged that "an employer has a right to expect its employees to work when scheduled." *Stagg*, 2010 WL 2160902, at *2 (citing *Smith v. Am. Ind. Chem. Dependency Diversion Project*, 343 N.W.2d 43, 45 (Minn.App.(1984)). However, as noted previously, the court determined that Stagg "could have reasonably expected Vintage [Place] to follow the disciplinary steps, and because Vintage skipped the fourth step of a ten-day suspension, [Stagg's] absenteeism does not amount to employment misconduct precluding eligibility for employment benefits." 2010 WL 2160902, at *4 (citing *Hoemberg*, 343 N.W.2d at 679). We conclude that the court of appeals' analysis in both this case and in *Hoemberg* fails to comport with the exclusive definition of "employment misconduct" set forth in Minn.Stat. § 268.095, subd. 6(a). Section 268.095 provides that an employee engages in employment misconduct if the employee clearly displays "a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn.Stat. § 268.095, subd. 6(a)(1). Thus, the focus of the inquiry is the employee's conduct, not that of the employer.

■ Whether an employee's absenteeism and tardiness amounts to a serious violation of the standards of behavior an employer has a right to expect depends on the circumstances of each case. But, in any event, whether an employer follows the procedures in its employee manual says nothing about whether the employee has violated the employer's standards of behavior. Put another way, an employee's expectation that the employer will follow its disciplinary procedures has no bearing on whether the employee's conduct violated the standards the employer has a reasonable right to expect or whether any such violation is serious.

Here, Vintage Place's employee handbook stated the employer's expectation—that employees "be at their workstation ready to begin work at an appointed time"—and urged employees to make "[a]ll reasonable efforts ... to be prompt in [their] arrival." The handbook also established the employer's "strong stand against absenteeism," which the handbook noted "hinders resident care and creates extra burdens for all the other staff." There is nothing in the record to suggest that there is anything unreasonable about this policy. Furthermore, the record supports the ULJ's findings that Stagg was aware of the attendance policy, as well as the reasons for it, and knew that he was expected to comply. Finally, the record establishes that Stagg failed to comply with the employer's attendance policy on at least five occasions.

■ The court of appeals appears to have concluded that the Vintage Place employee handbook amounted to a contract between employer and employee, the terms of which Vintage Place breached by not following its progressive discipline policy with respect to Stagg. *See Stagg*, 2010 WL 2160902, at *3–4 (interpreting the handbook to permit Vintage Place to discipline employees for absenteeism and tardiness and to require that such discipline must be done "in accordance with the five-step schedule"). Whether an employee handbook constitutes a contract between employer and employee, and whether the employer breached that contract by failing to act in accordance with the terms of the employee handbook, are relevant facts to claims for breach of contract made directly between employer and employee. But such claims are necessarily brought in a different forum. *See, e.g., Feges v. Perkins Rests., Inc.*, 483 N.W.2d

701, 707 (Minn.1992) (considering the jury's finding that the employer breached an employment contract due to the employer's failure to follow the three-step discipline policy in its employment manual). In contrast, the focus of disputes over the payment of unemployment benefits must be on whether the employee qualifies for benefits under the terms of the applicable statute, Minn.Stat. § 268.095.[1] Thus, we conclude that the court of appeals applied an improper standard when it determined that Stagg's conduct did not constitute employment misconduct.

■ Here, the record supports the ULJ's findings that Vintage Place had an absenteeism and tardiness policy of which Stagg was aware and that Stagg was aware that he was expected to follow that policy. The record also indicates that Stagg failed to follow that policy on at least five occasions. Given the record presented, we conclude that Stagg, having engaged in conduct that displayed clearly "a serious violation of the standards of behavior" that Vintage Place had the right to reasonably expect, was discharged for employment misconduct. We therefore reverse the court of appeals and reinstate the decision of the ULJ.

Reversed.

DIETZEN, J., took no part in the consideration or decision of this case.

---

1. To the extent that *Hoemberg* holds otherwise, it is overruled.