*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0471**

Keith Travis,
Relator,

vs.

Wal-Mart Associates, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 22, 2014
Affirmed
Schellhas, Judge**

Department of Employment and Economic Development
File Nos. 31850322-3, 32118742-2

Keith Travis, St. Paul, Minnesota (pro se relator)

Wal-Mart Associates, Inc., c/o TALX UCM Services, Inc., St. Louis, Missouri (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Relator challenges an unemployment-law judge's decision that he is ineligible to receive unemployment benefits because he was discharged for employment misconduct and because he was neither available for nor actively seeking employment. We affirm.

**FACTS**

Relator Keith Travis became employed by respondent Wal-Mart Associates Inc. on February 19, 2003, working full time as a tire team lead at Sam's Club. In March 2013, Travis suffered a serious injury to his right hand. Nothing in the record suggests that the injury was work related. As a result of the injury, Travis took a medical leave of absence (LOA) from work, beginning April 3, 2013, and ending June 17, 2013. When his first LOA ended, Travis took a second LOA, beginning June 18, 2013, and ending August 26, 2013. He subsequently took a third LOA, beginning August 26, 2013, and ending September 23, 2013. Wal-Mart approved all three LOAs.

Before the third LOA ended, Tara Lanigan, a Wal-Mart personnel training coordinator, made unsuccessful attempts to contact Travis. Lanigan therefore sent Travis a letter on September 25, 2013, stating:

> According to our records, your Leave of Absence expired on 09/23/2013. If you need to request an extension of your leave of absence, please contact me as soon as possible. I have included a packet for you and your healthcare provider to complete and return. If you do not wish to extend your leave, please contact a salaried member of management within three days of receipt of this letter to discuss your return to work. If you do not return to work or contact myself or management, your employment may end.

On October 8, 2013, Lanigan spoke with Travis, who "said that he did receive the letter and that he thought that he had faxed the request [for a fourth LOA] over on 9/27." Lanigan informed Travis that she had not received the LOA request or the medical certification that was required to approve such a request. Later that day, Lanigan did receive from Travis a faxed request for a fourth LOA, but she did not receive the medical certification. On October 10, Lanigan informed Travis that she still had not received the necessary certification and, at Travis's request, faxed the blank certification paperwork to his rehabilitation therapist. On October 11, Travis's rehabilitation therapist informed Lanigan "that she would give [Travis] the paperwork to give to a doctor."

On October 17, 2013, having heard nothing more from Travis or his healthcare providers, Lanigan "left a message on both of [Travis's] phone numbers." On October 22, still having heard nothing more from Travis or his healthcare providers, Lanigan contacted her "market HR manager and explained the situation," ultimately receiving "permission to go ahead and . . . terminate." That day Lanigan sent discharge papers to Travis's home address.

Travis established an unemployment-benefits account effective November 3, 2013. On December 2, the Minnesota Department of Employment and Economic Development (DEED) determined that Travis is ineligible to receive unemployment benefits because he was discharged for employment misconduct—namely, "failing to provide [Wal-Mart] with a medical statement" to excuse his continued absence.

3

Travis appealed DEED's determination of ineligibility, and an unemployment-law judge (ULJ) conducted an appeal hearing. The ULJ heard testimony from Lanigan, another Wal-Mart employee, and Travis. The ULJ continued the hearing to permit Travis "to get verification that the doctor sent in the [certification paperwork]." When the hearing continued, the ULJ primarily reviewed and elicited testimony regarding documents that Travis produced. The ULJ heard testimony from Lanigan, Travis, and Travis's wife, including testimony regarding the impact of Travis's hand injury on his ability and intent to work. Following the hearing, the ULJ decided that Travis is ineligible to receive unemployment benefits because he was discharged for employment misconduct and because he was neither available for nor actively seeking employment. Travis requested reconsideration of the decision, and the ULJ affirmed the decision.

This certiorari appeal follows.

## DECISION

The purpose of chapter 268, Minnesota's unemployment-insurance program, is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2012). The chapter is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2012).

"In unemployment benefit cases, the appellate court is to review the ULJ's factual findings in the light most favorable to the decision and should not disturb those findings as long as there is evidence in the record that reasonably tends to sustain them." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). The supreme

4

court has stated repeatedly that appellate courts "will narrowly construe the disqualification provisions of the statute in light of their remedial nature, as well as the policy that unemployment compensation is paid only to those persons unemployed through no fault of their own." *Id.* (quotations omitted). An applicant is ineligible for unemployment benefits if "the applicant was discharged because of employment misconduct," defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 4(1) (2012); 2014 Minn. Laws ch. 239, art. 2, § 5, at 772 (to be codified at Minn. Stat. § 268.095, subd. 6(a)).

Whether an employee committed employment misconduct is a mixed question of fact and law. *Stagg*, 796 N.W.2d at 315. "Whether the employee committed a particular act is a question of fact." *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). We defer to the ULJ's credibility determinations. *Neumann v. Dep't of Emp't & Econ. Dev.*, 844 N.W.2d 736, 738 (Minn. App. 2014). "[W]hether a particular act constitutes disqualifying misconduct is a question of law that we review de novo." *Stagg*, 796 N.W.2d at 315. We review de novo a ULJ's determination that an applicant is ineligible for unemployment benefits. *Neumann*, 844 N.W.2d at 738.

In this case, the ULJ found Lanigan's testimony to be "credible in all respects" and that Travis failed to provide Wal-Mart with medical certification for a fourth LOA, even after he was informed that such certification was required and given nearly a month

5

to provide it. The ULJ further found that Wal-Mart discharged Travis because he failed either to return to work or to provide medical certification for a fourth LOA. These factual findings are amply supported by record evidence and are not disputed by Travis on appeal.

The question in this case is whether Travis's failure either to return to work or to provide certification for a fourth LOA was "employment misconduct" within the meaning of section 268.095. "[A]bsence because of illness or injury of the applicant, with proper notice to the employer," is not employment misconduct. 2014 Minn. Laws ch. 239, art. 2, § 5, at 772–73 (to be codified at Minn. Stat. § 268.095, subd. 6(b)(7)). But an employee's "deliberate and direct contravention of the employer's directive to return to work" after a medical LOA ends, coupled with a "failure of [the employee] to seek additional medical leave," may constitute employment misconduct. *Fresonke v. St. Mary's Hosp.*, 363 N.W.2d 328, 330 (Minn. App. 1985).

Here, Travis allowed the third LOA to end without making arrangements to return to work, requesting a fourth LOA, or even contacting anyone at Wal-Mart to discuss his situation. As a result, Lanigan wrote to Travis and directed him either to "contact a salaried member of management . . . to discuss [his] return to work" or to contact her to "request an extension of [his LOA]." In the same letter, Lanigan indicated that "[Travis] and [his] healthcare provider" would have to "complete and return" an enclosed "packet" in connection with a request to extend his LOA and warned Travis that a failure to "return to work or contact [Lanigan] or management" could "end" his employment. Travis's responses were unsatisfactory and ineffective, resulting in his discharge.

6

Travis argues on appeal that he was not at fault for his healthcare providers' failure to timely complete and return the certification paperwork. But as noted by the ULJ, "[a]n employer has the right to reasonably expect that an employee requesting a medical [LOA] will provide certification from a doctor." *Cf.* 29 U.S.C. § 2613(a) (2012) (providing that "[a]n employer may require that a[n employee's] request for leave" due to the employee's own serious health condition or that of the employee's family member "be supported by a certification issued by the health care provider of the eligible employee or of the [family member] of the employee" and that "[t]he employee shall provide, in a timely manner, a copy of such certification to the employer"). Travis's attempts to induce his healthcare providers to deliver the certification directly to Wal-Mart, coupled with his lack of prompt follow-up when the healthcare providers did not do so, was "negligent[] or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment"—i.e., employment misconduct that disqualifies Travis from receiving unemployment benefits. *See* Minn. Stat. § 268.095, subd. 4(1); 2014 Minn. Laws ch. 239, art. 2, § 5, at 772 (to be codified at Minn. Stat. § 268.095, subd. 6(a)).

In addition to his disqualification for employment misconduct, Travis is ineligible to receive unemployment benefits on independent grounds. To be eligible for benefits, an applicant must be "available for suitable employment," defined as "ready, willing, and able to accept suitable employment." Minn. Stat. § 268.085, subds. 1(4), 15(a) (2012). The applicant's "attachment to the work force must be genuine. [The] applicant may

7

restrict availability to suitable employment, but there must be no other restrictions, either self-imposed or created by circumstances, temporary or permanent, that prevent accepting suitable employment." Minn. Stat. § 268.085, subd. 15(a). An applicant whose physical condition negatively impacts his ability to work is not thereby exempt from the requirement of availability for suitable employment. *See Mueller v. Comm'r of Econ. Sec.*, 633 N.W.2d 91, 92–94 (Minn. App. 2001) (concluding that determination that relator was not available for suitable employment was reasonably supported by evidence that, "because of [relator]'s medical restriction, she could not work the hours that are normal for her usual occupation or other employment"). Whether a person is available for suitable employment is a question of fact. *Semanko v. Dep't of Emp't Servs.*, 309 Minn. 425, 428, 244 N.W.2d 663, 665 (1976).

The applicant also must be "actively seeking suitable employment," defined as making "those reasonable, diligent efforts an individual in similar circumstances would make if genuinely interested in obtaining suitable employment under the existing conditions in the labor market area," to be eligible for benefits. Minn. Stat. § 268.085, subds. 1(5), 16(a) (2012). Whether a person is actively seeking suitable employment is a question of fact. *Goodman v. Minn. Dep't of Emp't Servs.*, 312 Minn. 551, 553, 255 N.W.2d 222, 223 (1977).

In this case, the ULJ elicited testimony from Travis that his hand injury was still bothering him and that he did not think that he was capable of working at the time of the hearing. He testified that he therefore had not been looking for work. His wife testified that he could not do anything. The testimony of Travis and his wife is "evidence in the

8

record that reasonably tends to sustain" the ULJ's factual findings that Travis is neither available for nor actively seeking suitable employment. *See Stagg*, 796 N.W.2d at 315. Travis therefore is ineligible to receive benefits due to his unavailability for and failure to actively seek suitable employment.

**Affirmed.**