*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1040**

Paul C. Stepnes,
Relator,

vs.

HOM Furniture, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed April 20, 2015
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 31940177-3

Sarah J. Demers, Katherine L. MacKinnon, St. Louis Park, Minnesota (for relator)

HOM Furniture, Inc., Coon Rapids, Minnesota (respondent employer)

Lee B. Nelson, Munazza Humayun, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Peterson, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Relator challenges the determination of the unemployment-law judge (ULJ) that he is ineligible for unemployment benefits because he was discharged for misconduct. We affirm.

**FACTS**

Relator Paul C. Stepnes worked as a sales consultant at respondent HOM Furniture, Inc. in May 2012. He was discharged in August 2013 following incidents in which he was confrontational with coworkers.

On July 6, 2013, Stepnes and a coworker engaged in a heated verbal exchange. Both were issued a written warning, but Stepnes refused to sign his warning. On August 19, 2013, Stepnes confronted another coworker in the guest services area, which is open to customers. Stepnes loudly expressed his anger at being scheduled for scanning duty, which is an uncompensated duty. A manager described Stepnes's behavior toward the other employee as loud and somewhat aggressive. The coworker sent an e-mail to Stepnes saying that his behavior was inappropriate. She also e-mailed management stating that she would be working when Stepnes was scheduled to work and "may need a bodyguard."

On August 24, 2013, the store manager met with Stepnes as a result of the confrontation regarding the scanning schedule. The manager attempted to counsel Stepnes on appropriate behavior toward coworkers, especially in the guest services area, but Stepnes turned the conversation to the scanning schedule. Stepnes said that he was

not going to scan, and the manager said that this would be viewed as insubordination. In response, Stepnes became very angry, stood up, and loudly yelled that he was "p---ed off." The store manager told Stepnes that his behavior was unprofessional and unacceptable. Stepnes moved toward the manager's face and yelled that his behavior was perfectly acceptable. The manager said Stepnes was so close that he could smell Stepnes's breath. The manager told Stepnes that he needed to leave. Stepnes asked if he was being fired, and the manager said that HOM would get back to him.

HOM discharged Stepnes on August 29, 2013 for being confrontational with coworkers. Following his discharge, a manager met with Stepnes regarding a possible independent contractor relationship, which would allow him to work with customers, but this did not pan out.

Stepnes established an unemployment-benefits account with respondent Department of Employment and Economic Development (DEED). But following an evidentiary hearing a ULJ concluded that Stepnes was ineligible for benefits because he was discharged for unemployment misconduct. Stepnes seeks certiorari review of the ULJ's decision.

## D E C I S I O N

*Eligibility*

This court may remand, reverse, or modify the decision of a ULJ if the substantial rights of the relator may have been prejudiced because the findings, conclusion, or decision are in violation of constitutional provisions or unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d)(1), (5) (2014).

3

An employee discharged because of misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Misconduct is "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014).

"Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg v. Vintage Place, Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). "Whether the employee committed a particular act is a fact question, which we review in the light most favorable to the decision and will affirm if supported by substantial evidence." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011). Whether a particular act amounts to disqualifying misconduct is a question of law, reviewed de novo. *Stagg*, 796 N.W.2d at 315.

Stepnes argues that he was discharged only for the August 24 confrontation with the store manager; therefore, the ULJ should have applied Minn. Stat. § 268.095, subd. 6(d) (2014), which provides: "If the conduct for which the applicant was discharged involved only a single incident, that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct." The ULJ concluded that Stepnes engaged in misconduct twice—the August 19 confrontation with a coworker and the August 24 incident. The ULJ also indicated that the July 6 incident, while not misconduct, should have served as notice to Stepnes about HOM's expectation regarding interactions with coworkers. *See Schmidgall v. FilmTec Corp.*, 644 N.W.2d

4

801, 804 (Minn. 2002) ("As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct.").

The record supports the ULJ's determination that Stepnes was discharged for more than a single incident. The record shows that Stepnes engaged in confrontations with coworkers on three occasions and that the last two amounted to misconduct. The August 19 and August 24 confrontations involved yelling and aggressive, confrontational body language. The ULJ considered the totality of Stepnes's conduct, and an employee's behavior "may be considered as a whole in determining the propriety of [his] discharge and [his] qualification for unemployment compensation benefits." *Drellack v. Inter Cnty. Cmty. Council, Inc.*, 366 N.W.2d 671, 674 (Minn. App. 1985).

Stepnes next argues that his conduct was not a serious violation of HOM's reasonable expectations, and thus not misconduct. We disagree. The three incidents all occurred within two months. The last two occurred within one week of each other. Stepnes was issued a written warning following the July 6 incident, which should have provided notice about HOM's expectations. The confrontations also involved three different coworkers, which indicates that Stepnes has trouble controlling his temper in general—he was not reacting to one particularly provocative or antagonistic person. Stepnes's repeated conduct was a serious violation of the conduct that HOM reasonably had a right to expect.

Stepnes further argues that HOM did not consider his conduct a serious policy violation because it considered offering him a position as an independent contractor. But no independent contractor relationship was ultimately formed. Stepnes was terminated

5

because of his conduct toward coworkers. An independent contractor works with customers, but often has a greater degree of separation from employees of a business. Whatever HOM's motivation for the offer, it was not a concession that the conduct for which Stepnes was discharged was not serious.

Finally, Stepnes argues that his conduct was justified because he was understandably upset over the fact that he had to do scanning and other work for which he was not compensated. But no contention is made that Stepnes had to do anything differently than any other employee in his position, or that Stepnes was placed on scanning duty an unreasonable number of times. While uncompensated work might warrant discussions with supervisors, it is not reasonable for an employee to yell at a coworker and a manager without decision-making authority out of frustration.

### *Procedural issues*

Stepnes contends that the ULJ inappropriately limited his questioning of witnesses, such that he could not adequately develop the record. He contends that another evidentiary hearing is required. A ULJ "must exercise control over the hearing procedure in a manner that protects the parties' rights to a fair hearing" and "ensure that all relevant facts are clearly and fully developed." Minn. R. 3310.2921 (Supp. 2014). A hearing is generally considered fair if both parties are afforded the opportunity to give statements, cross-examine witnesses, and offer and object to exhibits. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 529-30 (Minn. App. 2007).

Stepnes's argument is unpersuasive because it fails to consider the record as a whole. Stepnes's brief highlights instances in which the ULJ restricted his cross-

6

examination of witnesses that the ULJ had just questioned on direct exam. He fails to mention that he was provided a full opportunity to give his side of the story during his own direct examination. For example, the ULJ limited some of Stepnes's questions to the store manager, but Stepnes provided a full account of his encounter with the store manager during his own direct examination.

Stepnes provided his version of events, called a witness on his behalf, cross-examined HOM's witnesses, and gave a closing statement. The ULJ committed no error in limiting some of Stepnes's inquiries when they exceeded the scope of a prior direct exam or became cumulative or irrelevant.

**Affirmed.**