*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1385**

Angela Hofmann,
Relator,

vs.

Minnesota Department of Health,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed May 11, 2015
Affirmed; motion granted
Ross, Judge**

Department of Employment and Economic Development
File No. 32404605-3

Angela Hofmann, Wahpeton, North Dakota (pro se relator)

Minnesota Department of Health, St. Paul, Minnesota (respondent employer)

Lee B. Nelson, Munazza Humayun, St. Paul, Minnesota (for respondent department)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

Angela Hofmann was a health department employee who quit her job after she could no longer meet the travel obligations of her position and her supervisor offered her

an extended medical leave of absence. The department of employment and economic development determined that Hofmann is ineligible for unemployment benefits because she did not fall into any exception to the statutory voluntary-quit disqualification provision. Because Hofmann's employer offered a reasonable accommodation based on the information Hofmann provided, we hold that the medical-necessity exception does not apply and we affirm.

## FACTS

In January 2012, the Minnesota Department of Health hired Angela Hofmann as a health facility evaluator. Hofmann audited facilities around the state. She and her team would often spend several days inspecting a facility, necessitating hotel stays.

Hofmann suffered from depression, which worsened because her travel schedule kept her away from her family and interfered with her treatment. She began a leave of absence from the health department in October 2013 to address her condition.

Hofmann asked her supervisor whether the health department could assign her responsibilities that did not require overnight travel. Her supervisor explained that travel was essential to her position. The health department informed Hofmann in January 2014 that she could preserve her employment up to one year by requesting medical leave and documenting that the leave was medically necessary. Hofmann did not attempt to document the medical necessity of continued leave or request leave, and she resigned in February 2014. Hofmann later acquired medical documentation indicating that, as of February 11, she could work half days without travel.

Hofmann applied for unemployment benefits. An unemployment law judge (ULJ) decided that Hofmann is ineligible for benefits because she quit her employment and did not meet the requirements of either the good-cause exception or the medical-necessity exception. The ULJ determined that the health department had offered a reasonable accommodation for Hofmann's depression by inviting her to apply for extended medical leave. The ULJ affirmed his decision on reconsideration, determining that the extended leave was a legitimate offer but that Hofmann failed to pursue it. He also found that the offer was reasonable and that the health department was not obligated to offer a different position. Hofmann appeals by certiorari, and we decide the appeal based on the arguments of the parties, including Hofmann's late reply brief, which we accept under unique circumstances.

## D E C I S I O N

Hofmann argues that she is entitled to unemployment benefits because she quit her employment only because it was medically necessary for her to do so. Quitting employment generally makes an applicant temporarily ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 1 (2014). But an applicant whose serious illness makes quitting medically necessary might still receive benefits. *Id.*, subd. 1(7). This exception applies only if the applicant informed her employer of her health problem, the applicant requested an accommodation, and the employer failed to offer a reasonable accommodation. *Id.*

Hofmann contends that the health department failed to offer her a reasonable accommodation and that she had no choice but to quit her employment. The ULJ found

3

the contrary, concluding that Hofmann's employer made a "legitimate offer" by asking her to apply for extended unpaid leave. We defer to the ULJ's fact findings if they are supported by substantial evidence in view of the entire record, and we review those findings in the light most favorable to the decision. Minn. Stat. § 268.105, subd. 7(d) (2014); *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). The record shows that the health department conditioned its leave offer only on Hofmann's medical documentation of her need for the leave. The record includes no evidence that Hofmann's partial recovery by early February would have prevented her from qualifying for the offered extended leave. The ULJ's finding that Hofmann's employer offered to accommodate her illness is sufficiently supported.

Hofmann argues that granting her request for reduced hours and no travel would have constituted a reasonable accommodation. This might be so, but it does not require us to reverse. An employee falls within the medical-necessity exception only if her employer did not offer any reasonable accommodation. Minn. Stat. § 268.095, subd. 1(7). If the employer offers a reasonable accommodation, we do not inquire into whether it could have offered a different or better accommodation. *See Hirt v. Lakeland Bakeries*, 348 N.W.2d 400, 401 (Minn. App. 1984) (holding that the employer "must determine what is reasonable for the particular employee under the circumstances of that case"). Our question therefore is whether offering extended unpaid leave was a reasonable accommodation in light of the information Hofmann had given her supervisor.

When the health department offered unpaid leave of up to one year, it did not know that Hofmann would later indicate that she could return to work only in a limited

4

capacity in February. More to the point, Hofmann quit her employment before she submitted the post-resignation medical documentation that indicated she could work part time with travel restrictions. And Hofmann does not identify any position or alternative duties she could have been assigned with the accommodation she suggests. The health department's offer of extended leave was a reasonable accommodation under these circumstances.

**Affirmed; motion granted.**