*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0072**

Michelle Davidsavor,
Relator,

vs.

Department of Employment and Economic Development,
Respondent.

**Filed August 31, 2015
Reversed
Schellhas, Judge**

Department of Employment and Economic Security
File No. 32974034-2

William E. Dane, University Student Legal Service, University of Minnesota, Minneapolis, Minnesota (for relator)

Lee B. Nelson, Tim Schepers, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Relator raises procedural and substantive challenges to an unemployment-law judge's decision that she was ineligible for unemployment benefits. We reverse.

**FACTS**

During the 2013–2014 academic year, relator Michelle Davidsavor worked 20 to 40 hours per week as a server at a restaurant and attended classes in pursuit of a master's degree in human resources (HR). After completing an HR internship at a construction company in the summer of 2014, Davidsavor was unable to return to her service position as planned because the restaurant had closed. Davidsavor established an unemployment benefits account, and respondent Minnesota Department of Employment and Economic Development (DEED) issued a determination that Davidsavor was eligible for unemployment benefits for the week of August 24, 2014.

In early September 2014, Davidsavor resumed her HR studies, attending classes only on Wednesdays from 2:30 p.m. to 9:05 p.m. On September 24, Davidsavor missed a scheduled reemployment-and-eligibility-assessment (REA) session in order to participate in an information session regarding a prospective job. DEED therefore issued a determination that Davidsavor was not eligible for unemployment benefits for the week of September 21.

Davidsavor appealed the ineligibility determination; an unemployment-law judge (ULJ) conducted an evidentiary hearing by telephone conference, at which only Davidsavor testified. The ULJ decided that Davidsavor was not eligible for unemployment benefits from August 31, 2014, to the date of the hearing and continuing until conditions change, based on his finding that Davidsavor was not available for and

actively seeking suitable employment after August 31.[1] Davidsavor submitted a request for reconsideration. The ULJ issued an order of affirmation in which he clarified that the ineligibility decision was based on a finding that Davidsavor was not available for suitable employment, rather than a finding that Davidsavor was not actively seeking suitable employment.

This certiorari appeal follows.

## D E C I S I O N

The purpose of the Minnesota Unemployment Insurance Law is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). Chapter 268 is remedial in nature and must be applied in favor of awarding benefits; any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2014). "An applicant's entitlement to unemployment benefits must be determined based upon that information available without regard to a burden of proof." Minn. Stat. § 268.069, subd. 2 (2014). Unemployment benefits may not be denied or allowed on equitable or common-law grounds. *Id.*, subd. 3 (2014).

We may reverse or modify a ULJ's decision if the relator's substantial rights

> may have been prejudiced because the [ULJ's] findings, inferences, conclusion, or decision are:
>
> (1) in violation of constitutional provisions;
> (2) in excess of the statutory authority or jurisdiction of [DEED];

---

[1] The ULJ found that Davidsavor had missed the September 24 REA session with "good cause" and did not base his ineligibility decision, in whole or in part, "on the grounds that she missed her REA session."

3

> (3)  made upon unlawful procedure;
> (4)  affected by other error of law;
> (5)  unsupported by substantial evidence in view of the entire record as submitted; or
> (6)  arbitrary or capricious.

2015 Minn. Laws 1st Spec. Sess. ch. 1, art. 6, § 12 (amending Minn. Stat. § 268.105, subd. 7(d) (2014)). "In unemployment benefit cases, the appellate court is to review the ULJ's factual findings in the light most favorable to the decision and should not disturb those findings as long as there is evidence in the record that reasonably tends to sustain them." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). But "we exercise independent judgment with respect to questions of law," *Rowe v. Dep't of Emp't & Econ. Dev.*, 704 N.W.2d 191, 194 (Minn. App. 2005) (citing *Ress v. Abbott Nw. Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn. 1989)), and "we review the ULJ's ineligibility determination de novo," *Neumann v. Dep't of Emp't & Econ. Dev.*, 844 N.W.2d 736, 738 (Minn. App. 2014) (citing *Ress*, 448 N.W.2d at 523).

### Procedural challenges

Davidsavor first argues that "the ULJ failed to provide [her] with adequate notice that her availability for work and her efforts to seek work were going to be considered at the hearing." The notice of hearing indicates that the "[i]ssues to be [c]onsidered at th[e h]earing" were limited to "[w]hether . . . Davidsavor has participated in reemployment assistance services or whether there is good cause for a failure to do so." The ULJ also stated at the beginning of the hearing that "[t]he issue today appears to be whether [Davidsavor] had good cause for missing a reemployment eligibility assessment training

4

session." But about midway through the hearing, after eliciting Davidsavor's testimony regarding her reasons for missing the REA session, the ULJ said:

> The statement that you listed in your appeal statement and the little bit of testimony that you've given me today requires me to raise another issue on your account and that's the issue involving your school classes and any impact that that would have on your eligibility to receive unemployment benefits.

The ULJ informed Davidsavor, "[I]f you wish, we can do this today. We can get this done today. I'll ask you questions about your class schedule and . . . what types of . . . work you're looking for." The ULJ continued:

> If you don't want to do this today, you don't have to. If we're not going to do it today, then what that would mean is, it would be scheduled, the hearing would be in front of me about two or three weeks out and we'd be going through the same things that we'd be otherwise be going through today.

The ULJ asked Davidsavor, "[A]re you able to do this today?" Davidsavor responded affirmatively, and the ULJ proceeded to question Davidsavor about her education and employment history and plans, in connection with Davidsavor's availability for and efforts to obtain a suitable job.

Davidsavor argues that the ULJ's expansion of the scope of the hearing violated DEED rules and the Due Process Clause of the Minnesota Constitution and that, as a result, the ULJ's decision that Davidsavor was not eligible for unemployment benefits was made upon unlawful procedure and in violation of constitutional provisions. We disagree. "[An] unemployment law judge may take testimony and render a decision on issues not listed on the notice of hearing if each party is notified on the record, is advised of the right to object, and does not object." Minn. R. 3310.2910 (Supp. 2014). The ULJ

5

notified Davidsavor on the record of his intention to address the potential impact of Davidsavor's classwork on her eligibility for unemployment benefits; he also advised her on the record that he would not do so at the present time if she did not want him to do so. Davidsavor did not object to the ULJ's immediate consideration of the previously unnoticed issue; instead, she expressly consented to such consideration. The ULJ did not violate rule 3310.2910.

Davidsavor also argues that the midhearing notice was inadequate under DEED rules because it did not inform Davidsavor that "(1) the hearing [wa]s [her] only opportunity to present evidence, (2) a subsequent appeal w[ould] only consider evidence presented at the hearing, and (3) it [wa]s important to participate in the hearing because, if [Davidsavor wa]s deemed ineligible for benefits, [she] w[ould] have to pay back benefits received." Davidsavor cites Minn. R. 3310.2905 as the source of these and other notice requirements. But the cited rule does not set forth requirements for a midhearing notice permitted under rule 3310.2910; rather, it sets forth requirements for a written notice of hearing, which necessarily predates the hearing. *See* Minn. R. 3310.2905, subp. 2 (Supp. 2014) (providing that "[t]he chief unemployment law judge must send a notice of hearing, by mail or electronic transmission, to each party at least ten calendar days before the scheduled date of hearing," and specifying information that must be included in the notice of hearing). Davidsavor provides no authority in support of her attempt to import rule 3310.2905's requirements for a *prehearing* written notice of hearing into a rule 3310.2910 *midhearing* oral notice of previously unnoticed issues.

To the extent that Davidsavor makes a due-process argument that does not rely on the ULJ's supposed noncompliance with DEED rules, such argument lacks merit. "The fundamental requirements of due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Rew v. Bergstrom*, 845 N.W.2d 764, 786 (Minn. 2014) (quotation omitted). "Procedural due process is flexible and calls for such procedural protections as the particular situation demands." *In re Source Code Evidentiary Hearings*, 816 N.W.2d 525, 540 n.16 (Minn. 2012) (quotation omitted). Davidsavor agreed to address the previously unnoticed issue at the hearing despite being told that she could address the issue in "two or three weeks" instead. Moreover, after questioning Davidsavor about the issue, the ULJ gave Davidsavor an opportunity to be heard on any fact not yet brought to light and to make a closing statement. Finally, the previously unnoticed issue centered around Davidsavor's class schedule, employment history, and job-search efforts—nontechnical topics with which Davidsavor was familiar without advance preparation. The situation did not demand greater procedural protections than Davidsavor received; therefore, the ULJ's decision was not made upon unlawful procedure or in violation of constitutional provisions.

### Substantive challenges

Davidsavor challenges the merits of the ULJ's finding that she was unavailable for suitable employment, arguing that the finding is not supported by substantial evidence. To be eligible for unemployment benefits in a given week, an applicant must be available for suitable employment during that week. Minn. Stat. § 268.085, subd. 1(4) (2014). "'Available for suitable employment' means an applicant is ready, willing, and able to

7

accept suitable employment" and is placing "no . . . restrictions, either self-imposed or created by circumstances, temporary or permanent, that prevent accepting suitable employment." *Id.*, subd. 15(a) (2014).

> [T]o be considered "available for suitable employment," a student who has regularly scheduled classes must be willing to discontinue classes to accept suitable employment when: (1) class attendance restricts the applicant from accepting suitable employment; and (2) the applicant is unable to change the scheduled class or make other arrangements that excuse the applicant from attending class.

*Id.*, subd. 15(b) (2014). Whether an applicant is available for suitable employment is a question of fact. *Semanko v. Dep't of Emp't Servs.*, 309 Minn. 425, 428, 244 N.W.2d 663, 665 (1976).

In this case, the ULJ found that Davidsavor was unavailable for suitable employment because she had regularly scheduled classes on Wednesday afternoons and evenings during the relevant period and "[she] would not have quit school to accept one of the jobs for which she was applying." The ULJ appears to have based this finding on the following testimony by Davidsavor:

> Q: What would have happened if you applied for . . . one of these restaurant jobs or an entry level HR job and they said, . . . we really need someone, . . . we're really desperate for people with the hours but we need someone who can commit to like a standard 40 hour work week, Monday through Friday?
> . . . .
> A: I've had that happen and, you know, I just negotiated my hours with them. I told them I could do, you know, the normal hours Monday through Friday, except Wednesday I could come in for a half a day, and then if I needed to make up my hours on the other days throughout the week then that would be okay with me and most of them were okay with it.

8

The ULJ interpreted this testimony to suggest that Davidsavor would have declined a job offer from a prospective employer had that employer refused to "negotiate[ her] hours" to accommodate her class schedule.

But a ULJ's factual findings must be supported by "substantial evidence *in view of the entire record* as submitted." *See* Minn. Stat. § 268.105, subd. 7(d)(5) (emphasis added); *see also Cunningham v. Wal-Mart Assocs., Inc.*, 809 N.W.2d 231, 235 (Minn. App. 2011) (stating that "[f]indings of fact will be upheld if they are supported by substantial evidence *in light of the entire record*" (emphasis added)). Nothing in the record shows that Davidsavor ever declined a job offer because the prospective employer was unwilling to accommodate her class schedule. Indeed, Davidsavor also testified:

> Q: When [DEED] sent you a questionnaire earlier, you said that regarding the school issue, you indicated that you'd be willing to quit or rearrange your classes in order to accept work, but that you were unavailable on Wednesdays.
> A: Correct.
> Q: You would agree with that that . . . that's still the correct answer?
> A: Yes.
> Q: Okay.
> A: Actually, I just accepted a job offer.
> Q: Oh, well congratulations.

And the ULJ expressly found that "Davidsavor's testimony that she was willing to be very flexible in accepting a job was credible." "[W]e must defer to the ULJ's factually supported credibility determination." *Haugen v. Superior Dev., Inc.*, 819 N.W.2d 715, 723 (Minn. App. 2012). Thus, when viewed as a whole, the record does not contain

9

substantial evidence that Davidsavor was "[un]willing to discontinue classes to accept suitable employment." *See* Minn. Stat. § 268.085, subd. 15(b).

Moreover, a student-applicant need not be "willing to discontinue classes" if the applicant is able either to "change the scheduled class" that conflicts with suitable employment or to "make other arrangements that excuse the applicant from attending class." *See id.* And although Davidsavor had regularly scheduled classes on Wednesday afternoons and evenings during the relevant period, she testified that

> I guess class-wise I've had to miss a couple of my classes for like an interview or information session and the professors are pretty understandable [sic] with that as long as you inform them ahead of time. So, if . . . work really needed me on that Wednesday then I could work something out with my professors . . . .

The ULJ characterized this testimony as "indicat[ing] that [Davidsavor] could miss an occasional class if needed for work," stating that "[t]he implication was that she would be willing to miss a class or two if she were really needed on a given Wednesday; it was not that she would drop out of school entirely." But Davidsavor's ability to "work something out with [her] professors" if necessary to accommodate her acceptance of suitable employment permitted her to remain in school without sacrificing her eligibility for unemployment benefits. *See id.* On these facts, we conclude that the ULJ's finding that Davidsavor was not available for and actively seeking suitable employment after August 31, 2014, is "unsupported by substantial evidence in view of the entire record as submitted." *See* Minn. Stat. § 268.105, subd. 7(d)(5).

**Reversed.**