*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0034**

Mitchell Borchardt,
Relator,

vs.

J.R.'s Tech Center, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed September 8, 2015
Affirmed
Cleary, Chief Judge**

Department of Employment and Economic Development
File No. 32812775-3

Mitchell Borchardt, Princeton, Minnesota (pro se relator)

J.R.'s Tech Center, Inc., Maple Grove, Minnesota (respondent)

Lee B. Nelson, Tim Schepers, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Halbrooks, Presiding Judge; Cleary, Chief Judge; and Hooten, Judge.

**CLEARY**, Chief Judge

In a petition for certiorari review, relator Mitchell Borchardt challenges a decision by an unemployment-law judge (ULJ) that he is ineligible for unemployment benefits. Because Borchardt did not have good reason to quit caused by his employer, we affirm.

## FACTS

Borchardt was employed by J.R.'s Tech Center, Inc. from June 2008 until he quit his job on August 5, 2014. During his employment, Borchardt noticed a discrepancy between the number of hours on his time card and the number of hours on his paycheck. On July 8, 2014, after documenting his time cards and comparing them to his pay stubs, Borchardt informed his supervisor Darlene Theis about the potential discrepancies. Theis suggested that the discrepancies could have resulted from the company's practices of rounding to the nearest tenth of an hour and deducting lunch breaks. Because Borchardt did not believe that those explanations accounted for the discrepancies, he asked Theis to look into the issue further.

From July 8 until Borchardt quit on August 5, Borchardt never again raised the issue of pay discrepancies. After he quit, Borchardt applied for and began receiving unemployment benefits, on the basis that he quit his employment for a good reason caused by J.R.'s Tech Center, Inc. J.R.'s Tech Center, Inc. appealed the determination of eligibility and the ULJ held a hearing on the matter on October 14, 2014. At the hearing,

Borchardt testified on his own behalf and Theis testified on behalf of J.R.'s Tech Center, Inc.

The ULJ concluded that the circumstances surrounding Borchardt's decision to quit did not "amount to a situation that would cause an average, reasonable individual to quit." Borchardt requested a reconsideration of the ULJ's decision and the ULJ affirmed. This certiorari appeal followed.

## DECISION

Under the Minnesota Unemployment Insurance Law, an applicant for unemployment benefits who quits his employment is ineligible for benefits unless one of ten exceptions applies. Minn. Stat. § 268.095, subd. 1 (2014). In this case, the parties agree that the only possible exception that might apply is the good-reason exception in subdivision 1(1), which applies if the employee quit because of a good reason caused by the employer.

Minnesota law defines "good reason caused by the employer" as a reason "(1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a) (2014). Additionally, before quitting, the employee must complain to the employer and give the employer a reasonable opportunity to correct the adverse conditions. *Id.*, subd. 3(c) (2014).

3

The parties dispute whether the circumstances surrounding Borchardt's decision to quit were sufficient to have caused the average, reasonable employee to quit. Good cause requires that the circumstances causing the applicant to quit were "real, not imaginary, substantial not trifling, and reasonable, not whimsical." *Ferguson v. Dep't of Emp't Servs.*, 311 Minn. 34, 44 n.5, 247 N.W.2d 895, 900 n.5 (1976) (quotation omitted). Whether good cause exists is evaluated under the "standard of reasonableness as applied to the average man or woman, and not to the supersensitive." *Id.* (quotation omitted). Mere dissatisfaction or frustration with working conditions does not constitute good cause to quit. *Portz v. Pipestone Skelgas*, 397 N.W.2d 12, 14 (Minn. App. 1986).

This court may reverse or modify a decision by a ULJ if a party's substantial rights were prejudiced because the ULJ's findings, inferences, conclusions, or decision are unsupported by substantial evidence in the record or affected by an error of law. Minn. Stat. § 268.105, subd. 7(d)(3)-(5) (2014). Whether the applicant's reason for quitting qualifies for the good-reason exception is a legal question, which this court reviews de novo. *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006). An appellate court views a ULJ's factual findings in the light most favorable to the decision, and does not disturb the ULJ's findings if the evidence reasonably tends to sustain them. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). "Credibility determinations are the exclusive province of the ULJ . . . ." *Bangtson v. Allina Med. Grp.*, 766 N.W.2d 328, 332 (Minn. App. 2009) (quoting *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 345 (Minn. App. 2006)).

4

The purpose of chapter 268 is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). The "chapter is remedial in nature and must be applied in favor of awarding unemployment benefits." Minn. Stat. § 268.031, subd. 2 (2014). Any provision precluding receipt of benefits must be narrowly construed. *Id.*

The ULJ's decision assumes—without specifically finding—that Borchardt quit because he believed that he had not been paid for all the hours he had worked. The ULJ found that there were some discrepancies between Borchardt's time cards and paychecks. However, the ULJ credited Theis's testimony regarding her calculation of paychecks, and found that any discrepancies likely resulted from the company's payroll practices of (1) rounding to the nearest tenth of an hour and (2) deducting lunch breaks from the hours reported. The ULJ found that Theis believed that she had paid Borchardt accurately. Therefore, the ULJ concluded that Borchardt did not have good reason caused by the employer to quit.

The record includes one pay-period example that shows a one-hour shortfall even if the maximum amount is rounded and deducted for lunch breaks. Despite this small discrepancy, however, the ULJ appears to have correctly concluded that Borchardt did not have good reason to quit. Borchardt potentially could have benefited from Theis's rounding during some pay periods and he admitted that he had not yet calculated his pay for all of the pay periods he disputed. Nor did Borchardt follow up on his July 8 conversation with Theis to ask whether she was looking into the discrepancies for him.

5

In other words, at the time Borchardt quit, he did not know whether his overall pay during the disputed period was *certainly* short or whether he would yet be paid for any shortfall in his paychecks. Although a possible paycheck discrepancy could cause an employee to become frustrated or dissatisfied with their employer, it is not reasonable under these circumstances for a person to quit their employment on that basis.

**Affirmed.**