*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1375**

Michael B. Scott,
Relator,

vs.

Jerry's Enterprises, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed June 10, 2024**
**Affirmed**
**Ross, Judge**

Department of Employment and Economic Development
File No. 49498019-3

Michael B. Scott, Minneapolis, Minnesota (self-represented relator)

Keri Phillips, Katrina Gulstad, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Jerry's Enterprises, Inc. c/o TALX UCM Services, Inc., St. Louis, Missouri (respondent employer)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Reyes, Judge.

# NONPRECEDENTIAL OPINION

**ROSS**, Judge

Pharmacy technician Michael Scott's employer terminated his employment after investigating customer and coworker complaints that Scott was behaving rudely and aggressively. The Minnesota Department of Employment and Economic Development at first determined that Scott is eligible to receive unemployment benefits. After the employer appealed, an unemployment-law judge conducted a hearing after which the judge found credible the employer's allegation that it discharged Scott for engaging in rude and aggressive behavior, based in part on the judge's observation that Scott engaged in rude and aggressive behavior during the hearing. Because the unemployment-law judge had ample evidence on which to credit the employer's allegation that it discharged Scott for this behavior and the behavior constitutes employment misconduct, we affirm the determination that Scott is ineligible to receive unemployment benefits.

## FACTS

Michael Scott worked as a pharmacy technician at Jerry's Enterprises Inc. (Cub Foods) from November 2022 until March 2023. In March 2023 Scott's supervisors met with him attempting to discuss customer complaints that he had yelled at a nurse and impolitely interacted with a child. According to Scott's manager, Scott dominated the meeting, argued with his supervisors, and became increasingly agitated. He pointed at them, hit his own head, and yelled at them. He shouted that he was being bullied when he learned they were issuing him a verbal warning.

After that meeting, Scott continued to complain to a manager about the warning. A coworker intervened, telling Scott that he was behaving disrespectfully. Scott responded by yelling at the coworker while pointing his finger in her face. The coworker, fearing Scott, immediately left the area and locked herself in a small room. The manager called for security personnel to direct Scott to leave the store. The store director communicated with Scott the next day in a telephone discussion during which Scott yelled and denied any wrongdoing. Cub Foods terminated Scott's employment based on his aggressive, threatening, insubordinate, and unprofessional behavior.

Scott applied to receive unemployment benefits. The department of employment and economic development originally deemed him eligible for benefits, but Cub Foods appealed that decision to an unemployment-law judge (ULJ), who conducted an evidentiary hearing on Scott's eligibility. Throughout the hearing, Scott repeatedly interrupted the ULJ and other witnesses. The ULJ attempted to redirect Scott to answer questions, but Scott's answers were lengthy and unresponsive to the questions asked. The ULJ found that Cub Foods discharged Scott because of employment misconduct and determined that he is therefore ineligible to receive unemployment benefits. The ULJ confirmed that decision after Scott requested reconsideration.

Scott challenges that decision in this certiorari appeal.

**DECISION**

Scott argues that the ULJ wrongly determined that he is ineligible to receive unemployment benefits. An applicant is not eligible to receive unemployment benefits for unemployment that resulted from the applicant's discharge for employment misconduct.

3

Minn. Stat. § 268.095, subds. 4(1), 6(a) (2022). We will affirm a ULJ's factual findings if the record contains evidence that reasonably supports them. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). And we review *de novo* the issue of whether the supported findings constitute employment misconduct. *Id.* Here the ULJ found the facts described above based on the consistent testimony of multiple witnesses who saw Scott's behavior during the workplace discussions we have summarized. And the ULJ found that Scott's combative behavior during the hearing corroborated the testimony:

> The employer's testimony about Scott's behavior at work; that he was yelling, aggressive, threatening, and unprofessional, was supported by Scott's behavior in the hearing. During the hearing, Scott was argumentative [and] controlling, and [he] constantly interrupted the judge. Scott's answers were often nonresponsive, and when the judge attempted to redirect Scott, Scott merely got louder in order to control the conversation. Scott refused to take direction from the judge, raised his voice countless times to speak over the judge, and was extremely disruptive.

Because we defer to the ULJ's credibility determinations, *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006), we reject Scott's contention that the ULJ's findings were erroneous.

We have no difficulty affirming the ULJ's legal conclusion that Scott's conduct constitutes employment misconduct, which is "any intentional, negligent, or indifferent conduct, on the job or off the job, that is a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a). An employer would reasonably expect its employees to communicate with managers, coworkers, and customers civilly and courteously, not angrily, threateningly,

4

and explosively. Scott's behavior breached that standard. Scott also argues that the ULJ did not appropriately address his union representation, but the argument raises issues that have no bearing on the ULJ's relevant factual findings and consequent legal conclusion.

**Affirmed.**