JESSON, Judge
When loss of childcare causes an employee to quit a job, the employee may still be eligible for unemployment benefits, but only if a request for time off or other accommodation is denied by the employer. Here, an unemployment-law judge found that relator Jamie Gonzalez Diaz quit her job after losing her childcare, determined that she did not meet the accommodation-request requirement, and thus determined her ineligible for unemployment benefits. Because Gonzalez Diaz requested and received accommodations that were later taken away, we conclude that she is eligible for unemployment benefits and reverse the decision of the unemployment-law judge.
FACTS
Respondent Three Rivers Community Action, Inc. requires its ERSEA (Eligibility Recruitment Selection Enrollment and Attendance) coordinators to work either an 8:00 a.m.-4:00 p.m. or a 7:30 a.m.-3:30 p.m. shift. Relator began working as an ERSEA coordinator in March 2015, after working for Three Rivers since June 2013 as an administrative assistant. Around the time of this job change, challenges arose with Gonzalez Diaz's shift times and attendance due to the child-care needs of her four children. Gonzalez Diaz's youngest child required full-day childcare, and her three older children needed supervision while getting on a school bus at 7:50 a.m. Gonzalez Diaz's husband could not assist with childcare or supervision, as he was a farmer and left for work early in the morning and did not get home until "whenever the work is done."
To accommodate Gonzalez Diaz's issues, Three Rivers was flexible with her shift schedule, and she did not have to work the 8:00 a.m.-4:00 p.m. shift normally scheduled for ERSEA coordinators. However, this accommodation on its own was not sufficient, as Gonzalez Diaz still was unable to consistently work the entirety of her shifts due to childcare issues. To further accommodate Gonzalez Diaz, Three Rivers allowed her to request and use paid time off to fill in the gaps in her schedule.
Three Rivers continued to allow Gonzalez Diaz to work a different shift schedule, and use paid time off, until the child-care issue reached its peak in the middle of May 2017, when Gonzalez Diaz informed Three Rivers that she had lost all of her childcare. A few days later, Gonzalez Diaz had a meeting with her supervisors, where she was informed that she would no longer be accommodated with a different shift schedule than other employees, and that she needed to start working a regularly scheduled shift. Her supervisors explained that the "flexible hours were no longer *815 working," and provided suggestions and ideas on how to address the lack of childcare. Three Rivers' documentation, created after the meeting, stated that termination was a possible consequence of not working the requested hours.
On Thursday, May 25, Gonzalez Diaz sent an email requesting paid time off for Friday, May 26, due to a lack of childcare. The email also stated that, while she had childcare the following week, it would prevent her from working 8:00 a.m.-4:00 p.m. shifts. Her supervisors met with her that same day and reiterated that there would no longer be a different shift time for her, and that they expected her to be at work the following week at 8:00 a.m. Gonzalez Diaz asked what would happen if she did not show up at 8:00 a.m. and was told: termination.
Gonzalez Diaz showed up for work on time, at 8:00 a.m., at the start of the next week on May 30. But after her shift ended, she sent an email to her supervisor that she lost childcare for the next day and that she cleared out her personal belongings as she assumed she was terminated. The next morning the supervisors met to discuss Gonzalez Diaz's email, and they came to the conclusion that she quit. Three Rivers then sent an email and text to Gonzalez Diaz stating that the company accepted her resignation.
Gonzalez Diaz applied for unemployment benefits. Respondent Minnesota Department of Employment and Economic Security (DEED) determined that Gonzalez Diaz quit due to a loss of childcare and thus was eligible for unemployment benefits under an exception to the general rule that an employee who quits is ineligible for benefits (the loss-of-child-care exception). See Minn. Stat. § 268.095, subd. 1(8). Three Rivers appealed the quit determination, and a hearing was scheduled before an unemployment-law judge (ULJ). At the hearing, Three Rivers stated that it did not terminate Gonzalez Diaz, and it would have been willing to further accommodate Gonzalez Diaz's scheduling conflicts.[1]
The ULJ found that Gonzalez Diaz quit, and was not terminated, because "Gonzalez Diaz was not reasonably led to believe that she would not be allowed to return to work in any capacity after May 30." The ULJ reasoned that the loss-of-child-care exception did not apply because Gonzalez Diaz could have asked for an additional accommodation for the days she could not acquire childcare.[2] Accordingly, the ULJ determined Gonzalez Diaz ineligible for unemployment benefits. Gonzalez Diaz filed a request for reconsideration, and the ULJ affirmed its earlier decision.
Gonzalez Diaz appeals.
ISSUE
Did the ULJ err by determining that Gonzalez Diaz is ineligible for unemployment benefits?
ANALYSIS
On appeal, Gonzalez Diaz challenges the ULJ's determination that the loss-of-child-care exception does not apply.[3] This court reviews a ULJ's findings *816 of fact in a light most favorable to the decision, and will not disturb the findings so long as there is evidence in the record that substantially supports them. Minn. Stat. § 268.105, subd. 7(d)(5) (Supp. 2017); Wilson v. Mortg. Res. Ctr., Inc. , 888 N.W.2d 452, 460 (Minn. 2016).[4] But we apply a de novo standard of review "to the ULJ's interpretation of the unemployment statutes and to the ultimate question whether an applicant is eligible to receive unemployment benefits." Menyweather v. Fedtech, Inc. , 872 N.W.2d 543, 545 (Minn. App. 2015).
To determine whether Gonzalez Diaz satisfied the requirements of the loss-of-child-care exception, we first examine the unemployment-benefits statutory scheme and apply the plain language of the statute. We then look to caselaw for additional guidance. Based upon this review, and accepting all of the ULJ's factual findings as true, we conclude that Gonzalez Diaz satisfied all of the requirements of the loss-of-child-care exception, including the requirement to request an accommodation.
We start by examining the unemployment-benefits statute. Generally, an applicant who quits employment is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 1 (Supp. 2017). However, the legislature has set forth several explicit exceptions to this general rule, allowing certain applicants who quit to obtain unemployment benefits. See id. , subd. 1(1)-(10). While not originally one of the codified exceptions, the Minnesota Legislature in 2007 deemed the loss of childcare to be a significant enough circumstance to warrant an exception. See 2007 Minn. Laws ch. 128, art. 1, § 16 at 941. The loss-of-child-care exception allows applicants who quit to obtain unemployment benefits when:
[T]he applicant's loss of childcare for the applicant's minor child caused the applicant to quit the employment, provided the applicant made reasonable effort to obtain other childcare and requested time off or other accommodation from the employer and no reasonable accommodation is available.
Minn. Stat. § 268.095, subd. 1(8). With this understanding of the statutory scheme, we next apply this plain language to the case before us.
We discern four requirements from the plain language of the exception for it to apply to an applicant: (1) the applicant lost childcare; (2) the loss of childcare caused the applicant to quit; (3) the applicant made reasonable efforts to obtain other childcare and requested time off or an accommodation from the employer; and (4)
*817 those efforts were unsuccessful. See id. Here, the first two prongs are met and are not disputed on appeal-Gonzalez Diaz's loss of childcare is well established by the record, and the lack of childcare on May 31, 2017, is the sole reason Gonzalez Diaz quit. It is the last two prongs, whether Gonzalez Diaz requested an accommodation and if a reasonable accommodation was available, that are in dispute.
Under the plain language of the statute, we conclude that Gonzalez Diaz requested accommodation, and that no reasonable accommodation was available to her. Prior to May 2017, Gonzalez Diaz requested and received accommodations in the form of flexible shift scheduling and the ability to use paid time off to cover gaps in her schedule. But in May, her employer held a meeting to inform her that she would need to work her regularly scheduled hours, and they would no longer be "flexible" as it was "no longer working." A few days later, Gonzalez Diaz informed her employer that she needed to use paid time off to accommodate her lack of childcare. Gonzalez Diaz was then met with an immediate response: a meeting that same day where she was told to be on time the next scheduled work day or she would be terminated. These facts-that Gonzalez Diaz received accommodations, had the accommodations revoked, and received an uncompromising response when attempting to avail herself of accommodations that had been available in the past-are sufficient to show Gonzalez Diaz requested an accommodation, and no reasonable accommodation was available. We therefore conclude that the loss-of-child-care exception applies.
The ULJ determined that the exception did not apply because Gonzalez Diaz could have requested additional time off. We are not persuaded. While we do not disagree with any of the ULJ's factual findings and agree that Gonzalez Diaz could have requested additional time off, we disagree that she was required to in order for the exception to apply. Gonzalez Diaz had already requested and received accommodations multiple times, and Three Rivers was well aware of Gonzalez Diaz's ongoing child-care issues. Furthermore, Gonzalez Diaz's failure to renew her request for an accommodation was understandable as Three Rivers rescinded the implemented accommodation and met with Gonzalez Diaz to inform her she needed to work her scheduled shifts as a result of her requesting paid time off.[5]
The ULJ also emphasized that Gonzalez Diaz's child-care issue would be less of a problem during the summer, starting only a short time after she quit. However, whether the lack of childcare would have continued to be an issue is outside the scope of the analysis. The statute only requires that Gonzalez Diaz lost childcare and it caused her to quit. It does not mention anything regarding whether the issue would be ongoing or isolated. See Minn. Stat. § 268.095, subd. 1(8).
Caselaw supports our determination. In Madsen v. Adam Corp. , this court addressed an accommodation-request requirement in the context of a different exception to ineligibility based on a quit-the quit-for-serious-illness exception-that also requires employees to request an accommodation before quitting. 647 N.W.2d 35, 38 (Minn. App. 2002) ; see also *818 Minn. Stat. § 268.095, subd. 1(7). In Madsen , the employee did not submit a formal accommodation request in a timely manner, but she did communicate to her employer about her serious medical issue and discussed potential accommodations. Madsen , 647 N.W.2d at 38. The ULJ determined that the exception did not apply because she failed to submit an accommodation request. Id. at 37. This court reversed and concluded that, by informing her employer of the situation and discussing potential accommodations, she satisfied the accommodation-request requirement. Id. at 39. Here, the circumstances provide greater support for a determination that Gonzalez Diaz requested an accommodation than in Madsen , because Gonzalez Diaz not only continuously communicated with Three Rivers about her child-care situation, but requested and received accommodations until Three Rivers explicitly told her there would be no more flexibility.
Caselaw addressing accommodation requests in other areas of law is also instructive. For example, under the Americans with Disabilities Act, employees are required only to "provide the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." Kowitz v. Trinity Health , 839 F.3d 742, 748 (8th Cir.2016) (quotations omitted). And the Minnesota Supreme Court has determined that employees meet their burden of showing that they requested an accommodation in accordance with the Minnesota Human Rights Act when the employer is aware of the employee's disability and need for support. Hoover v. Norwest Private Mortg. Banking , 632 N.W.2d 534, 548 (Minn. 2001). Here, Gonzalez Diaz provided Three Rivers with enough information for them to know that her lack of childcare was an ongoing and significant issue. Both this caselaw and Minnesota's unemployment-benefits caselaw support our determination that Gonzalez Diaz requested an accommodation, and that no reasonable accommodation was available for her.
Because Gonzalez Diaz sufficiently put Three Rivers on notice of her need for an accommodation for her lack of childcare, and a reasonable accommodation was not available, the accommodation-request requirements are satisfied. The loss-of-child-care exception therefore applies, and we reverse the ULJ's determination.
DECISION
Generally, workers who quit employment are ineligible for unemployment benefits unless they fall within a statutory exception. Recognizing the importance of childcare, the legislature created an exception for individuals who quit because of a loss of childcare after they requested accommodation, if no reasonable accommodation is available. This exception does not require employers to accommodate employees who are having childcare issues; it merely allows employees who quit due to a lack of childcare to be eligible for unemployment benefits. The facts of this case present precisely the situation that the statute protects. Gonzalez Diaz lost childcare, and while her employer was accommodating at first, eventually the employer informed her there would no longer be any accommodations. And afterwards, when Gonzalez Diaz used time off to accommodate herself, she was immediately told she would have to work her scheduled hours. For purposes of the statute, Gonzalez Diaz requested an accommodation, and none was afforded to her, resulting in her needing to quit to care for her children. We therefore determine the loss-of-child-care exception applies, and we reverse the ULJ's determination.
Reversed.
KIRK, Judge (concurring specially)
*819 I agree with the majority that if relator Jamie Gonzalez Diaz quit, then the loss-of-childcare exception applies. But I write separately because I would determine that Gonzalez Diaz was terminated, and I would not reach the quit-exception issue.
The record shows that respondent-employer Three Rivers Community Action, Inc. initially was flexible with Gonzalez Diaz's shift times to accommodate her childcare issues. This changed when Three Rivers informed Gonzalez Diaz that it would not be flexible, that she needed to work her originally scheduled shift, and that her failure to do so could result in possible termination. A few days after learning this, Gonzalez Diaz told Three Rivers that she needed to use paid time off due to a lack of childcare. Supervisors met with Gonzalez Diaz and told her that she needed to work her scheduled shift times or she would be terminated.
Gonzalez Diaz showed up for her next shift on time, but later learned that she did not have childcare for the next day. At the end of her work day, she sent an email to her supervisor explaining that she did not have childcare for the next day and that she assumed she was terminated:
The [childcare] I had lined up for tomorrow bailed on me. I won't be able to work tomorrow. I assume this means that I will no longer have a job, so I am taking my personal belongings with me. If I am mistaken, please let me know. I am going by [the supervisor]'s statement that if I do not work 8-4 this week, I am terminated.
The following day, Three Rivers informed Gonzalez Diaz that the company accepted her resignation, but Gonzalez Diaz replied that she had not resigned. Three Rivers did not respond.
The unemployment-law judge (ULJ) found that Gonzalez Diaz had quit her employment and had not been terminated. The ULJ found that no exception applied and concluded that Gonzalez Diaz did not qualify for unemployment benefits. Whether an individual quit her job or was terminated is a question of fact. Lilledahl v. Process Displays Co. , 413 N.W.2d 273, 274 (Minn. App. 1987). We may reverse a ULJ's decision where a petitioner's substantial rights may have been prejudiced because the ULJ's findings are "unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 268.105, subd. 7(d) (Supp. 2017).
The unemployment-compensation statute defines "quit" as occurring when "the decision to end the employment was, at the time the employment ended, the employee's." Minn. Stat. § 268.095, subd. 2(a) (Supp. 2017). Here, Three Rivers decided that Gonzalez Diaz's employment would end when it told her that if she did not work a scheduled shift due to a lack of childcare, she would be terminated. Gonzalez Diaz did not have any input into this decision-making process, and it was not her decision to end her employment. Gonzalez Diaz did not quit.
The statute also provides that "[a]n employee who has been notified that the employee will be discharged in the future, who chooses to end the employment while employment in any capacity is still available, has quit the employment." Minn. Stat. § 268.095, subd. 2(c) (Supp. 2017). Gonzalez Diaz explicitly asked Three Rivers to let her know if she was mistaken in her belief that she was terminated. In responding, Three Rivers did not inform Gonzalez Diaz that it was a misunderstanding or inform her that she was not terminated, and therefore "employment in any capacity" was not "still available" to Gonzalez Diaz.
Finally, the statute's bar on the "theory of a constructive discharge" does not change my analysis. See Minn. Stat. § 268.095, subd. 5(c) (Supp. 2017) ("When *820 determining if an applicant was discharged, the theory of a constructive discharge does not apply."). A constructive discharge, in other employment-law contexts, occurs "when the employer has created a situation in which a reasonable person would feel compelled to resign or retire." See Shea v. Hanna Mining Co. , 397 N.W.2d 362, 368 (Minn. App. 1986) (referring to a constructive discharge under the Age Discrimination in Employment Act). Here, Gonzalez Diaz never quit; she was terminated. The constructive-discharge analysis does not factor into this case.
In view of the entire record, substantial evidence shows that Gonzalez Diaz was terminated. Therefore, I would reverse the ULJ's determination that Gonzalez Diaz voluntarily quit her employment.

The ULJ found that Three Rivers told Gonzalez Diaz she would face termination if she did not work her scheduled shift. The ULJ did not make any findings regarding whether Three Rivers would have been willing to further accommodate Gonzalez Diaz notwithstanding these statements made to her.

The ULJ also determined that Gonzalez Diaz did not meet an exception to ineligibility for a quit for a good reason caused by the employer. See Minn. Stat. § 268.095, subd. 1(1) (Supp. 2017). Gonzalez Diaz does not challenge that determination on appeal.

Gonzalez Diaz also challenges the ULJ's finding that she voluntarily quit her employment. The concurrence focuses its analysis on that issue. However, because we determine that the loss-of-child-care exception applies, we assume without deciding, that Gonzalez Diaz quit her job in accordance with the ULJ's findings. See Minn. Stat. § 268.095, subd. 2 (Supp. 2017) (providing that employee quits when decision to end employment was, at the time the employment ended, the employee's decision); Stassen v. Lone Mountain Truck Leasing, LLC , 814 N.W.2d 25, 31 (Minn. App. 2012) ("Whether an employee has been discharged or voluntarily quit is a question of fact subject to our deference.").

DEED suggests that Wilson is inconsistent with Minn. Stat. § 268.105, subd. 7(d)(5), quoting the supreme court's language that it "will not disturb [ULJ] findings as long as there is evidence in the record that reasonably tends to sustain them" and stating that "[t]he Supreme Court has chosen not to accept, or treat as a matter of comity, the legislature's substantial evidence standard." We note that the statute is expressly directed to review by this court. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2017). Moreover, "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Minneapolis Van & Warehouse Co. v. St. Paul Terminal Warehouse Co. , 288 Minn. 294, 180 N.W.2d 175, 178 (1970) (emphasis added). Thus, we discern no inconsistency between Minn. Stat. § 268.105, subd. 7(d)(5) and the standard articulated by the supreme court in Wilson .

DEED also argues that the difficulty Gonzalez Diaz had with supervising her 15 and 16 year olds was the cause of her missing work, not the loss of childcare for her youngest. But the ULJ found that the inability for Gonzalez Diaz to obtain childcare for her youngest child was the reason she quit. This is supported by Gonzalez Diaz's testimony, and we will not disturb the ULJ's findings so long as there is evidence in the record that substantially supports them. Minn. Stat. § 268.105, subd. 7(d)(5).