*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1211**

In the Matter of: Benita White.

**Filed April 1, 2024
Affirmed
Larkin, Judge**

Department of Employment and Economic Development
File No. 49560856-3

Benita White, Fridley, Minnesota (pro se relator)

Keri A. Phillips, Katrina Gulstad, Minnesota Department of Employment and Economic Development (for respondent department)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Larkin, Judge.

## NONPRECEDENTIAL OPINION

**LARKIN**, Judge

Relator challenges an unemployment-law judge's determination that she was ineligible for unemployment benefits because she was neither available for nor actively seeking suitable employment. We affirm.

## FACTS

Relator Benita White worked as a full-time teacher at Parent and Community Action (Head Start) until April 7, 2023. White has worked in early-childhood education for 30 years and has a degree and credentials in that field.

After White's employment ended, she applied for unemployment benefits. On a request-for-information form, she indicated that on the week of April 9, she was unable to work Monday through Friday and was not "currently looking for work" or "ready to accept work immediately" because she was her mother's sole caregiver. White's 91-year-old mother suffers from dementia and needs help with daily living activities, and at the time White left her employment, she was providing full-time care for her mother.

Respondent Minnesota Department of Employment and Economic Development deemed White ineligible for unemployment benefits until such time as she "is able to arrange the family responsibilities in a way" that allows her "to be available for, search for, and immediately accept a job." White appealed the ineligibility determination.

On May 10, White appeared by phone for a hearing before an unemployment-law judge (ULJ). No one else appeared at the hearing. White acknowledged that during the week of April 9, she could not have accepted work due to her family responsibilities. White testified that if she had not lost her job on April 7, she could have worked the following week, but she subsequently testified, "I guess that April 9 would have been a no because my mother had just recently had a heart attack." White acknowledged that her mother needed help "with pretty much all daily living activities." When the ULJ asked White if anyone was helping her, she replied, "I'm doing all of it."

White testified that she was in the "beginning stage" of looking for a facility for her mother. The ULJ asked, "Are you able to look for work at this time?" White replied that she was focusing her search on remote or part-time work and that she may have someone come in to watch her mother, but such assistance was not "confirmed." White

2

acknowledged that she had not submitted job applications and was "at the stage of looking to see what kinds of things are available." When asked what type of remote work she was looking for, White replied, "Anything that pertains to staying at home." White was asked whether she was able to accept an in-person position. She responded, "If somebody was to call tomorrow and I don't have suitable care, . . . I do have a lot of offers in my building" from people "who said they are willing to help me out . . . , so that could be a yes."

The ULJ issued an order finding that "[f]rom April 9, 2023[,] up to the date of the hearing and continuing, unless and until conditions change, White has been neither available for suitable employment nor actively seeking suitable employment," and therefore "White is ineligible to receive unemployment benefits for that period." The ULJ found that White was not available for or actively seeking suitable employment because she was providing full-time care for her mother.

The ULJ concluded that "White's claim that she could accept an offer of in-person employment was not entirely credible, because White did not have reliable backup care for her mother at that point." The ULJ also found that "the fact that White had not applied for any jobs yet shows that she was not actually able to work in employment as of the date of the hearing, due to her mother's care needs." The ULJ found that "[g]iven White's professional credentials and career history, suitable employment for her includes full-time work in early childhood education."

White requested reconsideration. White acknowledged that she was her mother's full-time caregiver, but she stated that she had searched for jobs and was available for work because her mother attends an "[a]dult day program part time." White also stated that if

3

the jobs she sought became available, her mother "would become full time at her day program."

The ULJ affirmed the original determination that White was ineligible for unemployment benefits, reasoning that White's claim that her mother could attend a full-time day program was "not consistent with the testimony" that White gave at the hearing. The ULJ also noted that White had not provided any "credible evidence showing that she ha[d] actually applied for any jobs since her employment . . . ended." The ULJ determined that White had "not provided any information or arguments that require changing the decision or ordering another hearing."

This certiorari appeal follows.

**DECISION**

White challenges the ULJ's determination that she is unavailable for work, arguing that the ULJ was "not aware that [her] mother was attending a day program, which allowed [her] to look for work." In reviewing a ULJ's decision, we may affirm, remand for further proceedings, or reverse and modify the decision if the substantial rights of the relator have been prejudiced because of legal or factual error, among other reasons. Minn. Stat. § 268.105, subd. 7(d) (2022).

To be eligible for unemployment benefits, an applicant must meet all the ongoing eligibility requirements in Minn. Stat. § 268.085, subd. 1 (2022). *McNeilly v. Dep't of Emp. & Econ. Dev.*, 778 N.W.2d 707, 710-11 (Minn. App. 2010). Applicants must be "available for suitable employment" and "actively seeking suitable employment." Minn. Stat. § 268.085, subd. 1(4)-(5). Whether an applicant is available for and actively seeking

4

suitable employment are questions of fact. *Goodman v. Minn. Dep't of Emp. Servs.*, 255 N.W.2d 222, 223 (Minn. 1977); *Semanko v. Dep't of Emp. Servs.*, 244 N.W.2d 663, 665 (Minn. 1976); *McNeilly*, 778 N.W.2d at 711-12.

We review a ULJ's findings of fact "in the light most favorable to the decision." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). We will not disturb those findings "so long as there is evidence in the record that substantially supports them." *Gonzalez Diaz v. Three Rivers Cmty. Action, Inc.*, 917 N.W.2d 813, 815-16 (Minn. App. 2018). We generally defer to a ULJ's credibility determinations. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *rev. denied* (Minn. Oct. 1, 2008).

## I.

The term "available for suitable employment" is defined as "ready, willing, and able to accept suitable employment." Minn. Stat. § 268.085, subd. 15(a) (2022). Although the applicant "may restrict availability to suitable employment," there must be "no other restrictions, either self-imposed or created by circumstances, temporary or permanent, that prevent accepting suitable employment." *Id.* Thus, "[a]n applicant who is absent from the labor market area for personal reasons, other than to search for work, is not 'available for suitable employment.'" *Id.*, subd. 15(c) (2022). Likewise, "[a]n applicant who has restrictions on the hours of the day or days of the week that the applicant can or will work, that are not normal for the applicant's usual occupation or other suitable employment, is not 'available for suitable employment.'" *Id.*, subd. 15(d) (2022). In general, "suitable employment" means work available in an applicant's labor market "that is reasonably related to the applicant's qualifications." Minn. Stat. § 268.035, subd. 23a(a) (2022).

Here, the ULJ found that White was not available for suitable employment because she was caring for her mother. Although White testified that she could accept an in-person position if one was offered, the ULJ did not credit that testimony because White did not have reliable care for her mother.

The record substantially supports the ULJ's finding and credibility determination. On the request-for-information form, which was admitted into evidence, White indicated that she was not "ready to accept work immediately" because she was her mother's sole caregiver. At the May 10 hearing, White acknowledged that she could not have worked the week of April 9 because her mother had recently suffered a heart attack, and White acknowledged that her mother needed help "with pretty much all daily living activities." White testified that she was in the "beginning stage" of looking for a facility for her mother. Although White stated that she potentially could have accepted a position, her testimony on this point was equivocal: White indicated that such acceptance was contingent on obtaining assistance with her mother's care. On this record, the ULJ did not err in finding that White was unavailable for suitable employment because she lacked reliable care for her mother.

## II.

In addition to being "available for suitable employment," an applicant must be "actively seeking suitable employment." Minn. Stat. § 268.085, subd. 1(4)-(5). The term "actively seeking suitable employment" is defined in part as "those reasonable, diligent efforts an individual in similar circumstances would make if genuinely interested in

obtaining suitable employment under the existing conditions in the labor market area." *Id.*, subd. 16 (2022).

The ULJ found that White was not actively seeking suitable employment because she was caring for her mother. The record substantially supports this finding. White indicated that during the week of April 9 she was unable to work and was not "currently looking for work" because she was caring for her mother. At the hearing, White acknowledged that she had not submitted any job applications and stated that she was "at the stage of looking to see what kinds of things are available." On this record, the ULJ did not err in finding that White was not actively seeking suitable employment.

**III.**

White sought reconsideration of the ULJ's determination, asserting that her mother attends an "[a]dult day program part time" and that White was therefore available for work. White also asserted that if jobs became available, her mother "would become full time at her day program."

On a request for reconsideration, "the ULJ may modify the findings and decision, set aside the findings and decision and direct that an additional evidentiary hearing be conducted, or affirm the findings and decision." *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007). The ULJ "must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing," and the ULJ must order a new evidentiary hearing if the party "shows that evidence which was not submitted at the hearing . . . would likely change the outcome of the decision and there was good cause for not having previously submitted that

7

evidence." Minn. Stat. § 268.105, subd. 2(c) (2022). When reviewing the denial of a request for reconsideration, "[a] reviewing court accords deference to a ULJ's decision not to hold an additional hearing and will reverse that decision only for an abuse of discretion." *Skarhus*, 721 N.W.2d at 345.

White did not provide "good cause" for not previously submitting evidence regarding her mother's attendance at an adult day program. *See* Minn. Stat. § 268.105, subd. 2. The ULJ was therefore precluded from considering that evidence. Thus, the ULJ did not err by declining to modify the original determination of ineligibility or by refusing to grant a new hearing.

We commend White for caring for her mother. However, White has failed to provide a basis to reverse or modify the ULJ's decisions. White indicates in her brief to this court that her mother attends an adult day program, which has allowed White to obtain employment. If White now has suitable care for her mother, she can make that information known in any subsequent requests for unemployment benefits. Again, the ULJ found White ineligible "unless and until conditions change."

**Affirmed.**