*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1189**

Elizabeth Young,
Relator,

vs.

Coborn's Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed May 13, 2024
Affirmed
Connolly, Judge**

Department of Employment and Economic Development
File No. 49527744-3

Elizabeth Young, Pierz, Minnesota (pro se relator)

Coborn's Inc., St. Cloud, Minnesota (respondent employer)

Keri Phillips, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Bratvold, Presiding Judge; Connolly, Judge; and Smith, Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

        Relator challenges the decision by an unemployment law judge (ULJ) that relator is ineligible for unemployment benefits because she was discharged for employment

misconduct and aggravated misconduct of paying herself unused paid time off (PTO) in violation of respondent-employer's policies. Relator also argues that the ULJ erred by failing to consider documents she submitted with her request for reconsideration. Because the ULJ did not err in determining that relator was discharged for employment misconduct, and the ULJ's error in failing to consider the documents relator submitted with her request for reconsideration did not prejudice relator's substantial rights, we affirm.

**FACTS**

Relator Elizabeth Young worked full-time at respondent Coborn's Inc. as a payroll supervisor. A description of Young's job states that she is required to "enforce company policy related to payroll." One of these policies states that employees can only carry over 80 hours of PTO from one year to the next, and that, to the extent an employee retains more than 80 PTO hours at the end of the year, those PTO hours are forfeited. Coborn's also has a policy stating that no employee can elect to receive cash in lieu of using PTO. The policy further provides that employees may not exceed the total amount of hours as defined by their employment classification through a combination of PTO and other paid hours, meaning that full-time employees scheduled to work 40 hours per week may not be paid for more than 40 hours in a week using any combination of PTO and other paid hours.

In March 2023, Coborn's received a tip that Young was improperly adding PTO hours to pay herself in excess of 40 hours per week. Specifically, Young paid herself for 206.93 hours of PTO, totaling approximately $6,986 to which she was not entitled. Young's supervisor confronted her about her behavior, and Young admitted to adding the PTO hours to her salary and that she knew this was against policy and doing so would

2

result in termination. Young was subsequently discharged for "wage theft and payroll fraud."

Young applied for unemployment benefits with respondent Minnesota Department of Employment and Economic Development (department), and the department issued a determination of ineligibility stating that Young was not eligible for unemployment benefits because she had been discharged because of employment misconduct and aggravated employment misconduct. Young appealed that determination and a de novo hearing was conducted.

Young acknowledged at the hearing that she engaged in the alleged misconduct. But Young claimed that she never admitted to her employer that she knew her conduct was wrong. Young also testified that she paid herself out of the PTO because she had so much work that she "was not able to use [her] PTO, and . . . was going to end up losing 136 hours." And according to Young, she spoke with her supervisor about her excess PTO, and her inability to use it, and he told her that they "would do it . . . off books."

Following the hearing, the ULJ determined that Young's actions amounted to employment misconduct and aggravated employment misconduct because "Young gave herself cash payouts of almost $7,000 that she had no right to," "[s]he knew she had no right to these payments," and her conduct "had a significant adverse impact on Coborn's." Thus, the ULJ concluded that Young was ineligible for unemployment benefits.

Young requested reconsideration of the ULJ's decision, and faxed to the department several pages of documents in support of her request. The ULJ denied Young's request for reconsideration, concluding that she "did not provide any information in her request for

3

reconsideration. She simply copied and pasted the words, 'Specific statements about any perceived factual or legal error in the decision. Specific statements about any perceived error in procedure that occurred during the hearing.'" This certiorari appeal follows.

**DECISION**

**I.**

Young challenges the ULJ's decision that she is ineligible for unemployment benefits because she was discharged for employment misconduct and aggravated employment misconduct. "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job, that is a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a) (2022). An employee who is discharged for employment misconduct is ineligible for unemployment benefits. *Id.*, subd. 4(1) (2022).[1]

Whether an employee committed employment misconduct is a mixed question of law and fact. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). On appeal, this court defers to the ULJ's credibility determinations and will uphold the ULJ's findings of fact if supported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d)(5) (2022); *Wilson v. Mortg. Res. Ctr., Inc.*, 888 N.W.2d 452, 460 (Minn. 2016). Substantial evidence

---

[1] An employee who is discharged for aggravated employment misconduct is also ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(2) (2022). Aggravated employment misconduct is an "act, on the job or off the job, that would amount to a gross misdemeanor or felony . . . if the act had a significant adverse effect on the employment." *Id.*, subd. 6a(a) (2022). Young does not dispute that, if the ULJ properly determined that she committed employment misconduct by taking funds to which she was not entitled, she also committed aggravated employment misconduct because the conduct would amount to a gross misdemeanor or felony and had a significant adverse effect on the employment.

4

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gonzalez Diaz v. Three Rivers Cmty. Action, Inc.*, 917 N.W.2d 813, 816 n.4 (Minn. App. 2018) (emphasis omitted) (quotation omitted). But we review de novo whether the facts found by the ULJ constitute employment misconduct. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

Young argues that the ULJ erred in finding that she engaged in employment misconduct because she "was not aware of a policy stating [that] employees cannot go over 40 hours a week when using PTO." Instead, Young claims that she previously had a conversation with her supervisor about losing her PTO hours, and that he told her "to use as many PTO hours as [she] could to get [her] balance as close to 80 as [she] could and the remaining balance" would be "handle[d] off the books," which she interpreted to mean that she "could use the PTO."

We are not persuaded. Young's supervisor testified at the hearing that Young admitted to the alleged misconduct, and that her behavior was not an honest mistake because "[e]very employee . . . is under the exact same policy," and Young's "role is specifically the one to enforce it for the whole company." Moreover, Young acknowledged at the hearing that she engaged in the alleged misconduct. Although Young claimed that she did not know that her behavior was wrong based on statements her supervisor allegedly made, the ULJ specifically found that "[t]o the extent [Young's] testimony differed from that given by Coborn's, it was not credible" because Young's explanation for why she engaged in the misconduct, "whether she knew it was permitted, and what she told Coborn's when confronted was vague, hesitant, and occasionally contradictory." Instead,

5

the ULJ found the testimony of Young's supervisor to be "clear and straightforward" and lacking "anything to suggest inaccuracy or deception." We defer to this credibility determination. *See Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006) (providing that this court defers to credibility decisions by the ULJ). Therefore, because the ULJ's credibility findings require deference, and the ULJ's findings are supported by the evidence presented at the hearing, the ULJ did not err in finding that "Young gave herself cash payouts of almost $7,000 that she had no right to."

We now turn to the question of whether Young's conduct constitutes disqualifying employment misconduct. This court has held that "[a] single incident of theft by an employee is employment misconduct." *Pierce v. DiMa Corp. (1992)*, 721 N.W.2d 627, 630 (Minn. App. 2006). Here, the ULJ found that "Young gave herself cash payouts of almost $7,000," to which she was not entitled. Because the ULJ found that Young intentionally overpaid herself using PTO hours, and that finding is supported by substantial evidence, the ULJ did not err in determining that Young was discharged for employment misconduct. Accordingly, Young is not entitled to unemployment benefits.

## II.

Young also contends that the ULJ erred in failing to address the additional evidence and arguments she submitted in support of her request for reconsideration. The department acknowledges that "[t]his was an error." But the department contends that the "error is harmless because the new evidence would not impact the decision. We agree with the department.

6

"In deciding a request for reconsideration, the [ULJ] must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing." Minn. Stat. § 268.105, subd. 2(c) (2022). A ULJ "must order an additional hearing if a party shows that evidence which was not submitted at the hearing" either, first, "would likely change the outcome of the decision" and the party had good cause for not submitting it earlier or, second, "would show that the [other] evidence that was submitted at the hearing was likely false" and that the false evidence affected the decision. *Id.* We will "not reverse a ULJ's decision to deny an additional evidentiary hearing unless the decision constitutes an abuse of discretion." *Kelly v. Ambassador Press, Inc.*, 792 N.W.2d 103, 104 (Minn. App. 2010). And we will not reverse a ULJ's decision when the claimed error did not prejudice the relator's substantial rights. Minn. Stat. § 268.105, subd. 7(d) (2022). A ULJ's decision does not prejudice a relator's substantial rights where the error is harmless. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 530 (Minn. App. 2007).

Here, Young claimed that she "obtained additional evidence after the hearing," and that it was not obtained before the hearing because she had "not previously participated in an unemployment hearing and thought [she] would be able to explain the situation however [she] broke down as [she] was mentally and emotionally exhausted, after being discharged." But Young knew the reason for her discharge and there is no indication that Young's additional evidence was not available before the hearing. Although Young claimed to be "mentally and emotionally exhausted," a reasonable person acting with due diligence would understand that evidence that is available and relevant to her argument

7

should be presented at the hearing. Therefore, Young is unable to establish good cause for failing to submit the additional evidence at the hearing. *See* Minn. Stat. § 268.105, subd. 2(c) (requiring a party to show good cause for not submitting the new evidence at the hearing).

Moreover, the new evidence would likely not have changed the outcome of the decision. In her request for reconsideration, Young simply made the same arguments that she did at the hearing: (1) that she did not know that her conduct was wrong; (2) that her supervisor told her to get her PTO hours as close to 80 as she could and that they would take care of the rest "off the books"; and (3) that, although she was never told that she could not take PTO, she realistically could not take PTO and still keep up with her job duties. To support her position, Young submitted a "Payroll Pay Week Check List." But this checklist does not support Young's arguments. Rather, the checklist shows that Young was required to check "[i]f an employee is over 40 hours," and adjust the time sheet accordingly, such as "edit[ing] PTO request[s] to bring them back to 40." Consequently, the new evidence actually supports the ULJ's finding that "Coborn's only allows employees to be paid for 40 hours in a week," and that "Young was aware of this policy" because "[p]art of her job duties as the payroll supervisor was to ensure that employees were not combining regular pay plus PTO to get more than 40 hours in a week."

Finally, Young's claim that she was so over-worked that she was unable to take her PTO has nothing to do with whether she engaged in employment misconduct. And to the extent that she claims that her supervisor acquiesced to her conduct, there is nothing in the additional evidence submitted by Young that supports her position other than her self-

8

serving assertions.  The ULJ specifically found Young's position on this issue to not be credible, and there is nothing in the additional evidence submitted by Young that contradicts this finding.  Accordingly, the ULJ's failure to consider Young's additional evidence is harmless because it did not prejudice Young's substantial rights.

**Affirmed.**